Commonwealth ex rel. Diggs, Appellant, *v.* Banmiller.

Submitted September 17, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*William Diggs*, appellant, in propria persona.

*Ernest L. Green*, Assistant District Attorney, *J. Harold Hughes*, First Assistant District Attorney, and *Raymond R. Start*, District Attorney, for appellee.

OPINION BY WATKINS, J., November 11, 1959:

This is an appeal from the dismissal of a petition for a writ of habeas corpus by the Court of Common Pleas of Delaware County. The record discloses that William Diggs, the relator appellant, was charged in twenty bills of indictment, Nos. 215 to 234 inclusive, June Sessions, 1943 with assault, assault with intent to rob, burglary and larceny, growing out of fifteen purse snatchings from women on the streets of the City of Chester, Delaware County, Pennsylvania.

The relator was arrested on April 29, 1943. The cases were called on June 11, 1943 before President Judge SAMUEL E. SHULL, of the 43rd Judicial District, now deceased. The Commonwealth was represented by Assistant District Attorney Karl W. Johnson, now deceased. The relator was not represented by counsel.

He pleaded guilty to all twenty bills of indictment and his signature appears on each bill to said plea. He was sentenced to pay fine and costs and to undergo imprisonment in the Eastern State Penitentiary for terms of 10 to 20 years on bills 215, 216, 217, 218 and 219 respectively, and 5 to 10 years on each of the other bills, all sentences to run concurrently with the sentence of 10 to 20 years on bill 215.

The transcript shows that the county detective related to the court, in the presence of the relator, a series of fifteen handbag snatchings admitted by him. These handbags were all taken from women on the streets of Chester, and their contents ranged from personal items and small sums of money to amounts exceeding $100. He would usually just snatch the bag and run but if he experienced any opposition he struck, slapped or hit his victim with his fist. In some instances the woman fell to the ground; another he knocked to the ground with a punch to the jaw; another was slapped in the face before the taking of the bag; and several of his victims fell to the ground as a result of the taking.

Each incident was described by the officer in detail, an example of which follows: By the court to the officer: "Q. Will you just take your list, which I believe conforms with mine, and tell us the date of the offense, what was taken, from whom it was taken? A. I will go down it. Q. This is what the young man admitted to you? A. Yes. February 18, 1943, time 1 a.m., snatched a hand bag from Mrs. Alice Oliver; place at 3rd and Jeffrey Streets; bag contained $17.20; bag was not recovered." Another example: "April 14, 1943, time 6:45 a.m., snatched hand bag from Josephine Petrillo; place, 2nd and Pennell Streets; bag contained one dollar in change, a railroad pass; bag was not recovered; pictures were on him at the time of the

arrest. This lady was knocked down by a punch in the jaw."

And so down the list of admitted instances, beginning on February 18, 1943 and ending on April 29, 1943. The officer also informed the court that the epidemic of purse snatchings which had terrorized this neighborhood since February of 1943 ended with the arrest of the relator.

It should be pointed out that there is no allegation in his petition to indicate his innocence of the crimes charged, and further he waited sixteen years after the judge who tried the case and the prosecuting officer were both deceased, to raise the question. In a habeas corpus proceeding the judgment carries with it a presumption of regularity which becomes stronger the longer the judgment stands and when one undertakes to overcome it, his evidence must be clear and convincing. *Com. ex rel. Savage v. Hendrick,* 179 Pa. Superior Ct. 601, 118 A. 2d 233 (1955); *Com. ex rel. Faulde v. Banmiller,* 186 Pa. Superior Ct. 100, 140 A. 2d 455 (1958). Here, most certainly, this relator has failed to sustain this burden. We have held in a similar factual situation that a relator's delay of 9 years before making an application convicted him of such laches as prevented him from now raising the question where in that case it appeared that the sentencing judge and the city detective, who was alleged to have promised relator a suspended sentence at the time of the guilty plea, were both deceased. *Com. ex rel. Robinson v. Cavell,* 185 Pa. Superior Ct. 52, 138 A. 2d 172 (1958).

"The federal Constitution does not command a state to furnish defendants counsel as a matter of course, as is required by the Sixth Amendment in federal prosecutions; lack of counsel at state non-capital trials denies federal constitutional protection

only when the absence results in a denial to accused of the essentials of justice." *Commonwealth v. Asher,* 181 Pa. Superior Ct. 80, 124 A. 2d 701 (1956). The burden is upon the one who avers denial of due process because of failure to provide counsel for him to prove that for want of benefit of counsel an ingredient of unfairness operated in the process that resulted in his confinement. *Com. v. Kadio,* 179 Pa. Superior Ct. 196, 115 A. 2d 777 (1955). In this case, the record does not show, nor the relator did not contend that he requested and was refused counsel, *Com. ex rel. Savage v. Hendrick,* supra, but his contention seems to be that because of the lack of counsel, together with the fact that he was under 18 years at the time of the sentence, that the sentence itself was illegal and he is therefore entitled to the writ. The factors of youth and inexperience coupled with a serious charge do not per se establish any element of unfairness in the proceeding resulting in confinement. *Com. ex rel. Popovich v. Claudy,* 170 Pa. Superior Ct. 482, 87 A. 2d 489 (1952); *Com. v. Kadio,* supra.

It is true that at the time of sentence he was not 18 years of age. He became 18 on July 23, 1943 and was sentenced June 11, 1943. In reading this record there is no question that the date the relator became 18 years of age was called to the attention of the trial court as being July 23, 1943. However, the Assistant District Attorney, said, "he is just over the minimum juvenile age and we are entitled to take jurisdiction", so that the information given the court was accurate if the word "minimum" was in reference to that pertinent portion of the Act of Assembly reading, "If such child is sixteen years of age or over and less than eighteen years of age", and the Assistant District Attorney was treating sixteen years as the "minimum juvenile age" and 18 years as the "maximum juvenile age".

We agree, however, with the court below that if it appears during the pendency of a criminal charge in a Court of Quarter Sessions or Court of Oyer and Terminer that the defendant is 16 years of age or over and less than 18 years of age, as in this case, "Such court may, at its discretion, transfer such cases to the juvenile court." Transfer is not required. Act of June 2, 1933, P. L. 1433, §14; as amended, Act of June 15, 1939, P. L. 394, §1, 11 PS 256. *Trignani's Case*, 150 Pa. Superior Ct. 491, 28 A. 2d 702 (1942). We have held that in such situations the Court of Quarter Sessions and the Court of Oyer and Terminer have jurisdiction of the relator even if the averment as to his age is accepted as true. *Com. ex rel. Firmstone v. Myers*, 184 Pa. Superior Ct. 1, 132 A. 2d 707 (1957).

Order affirmed.