Piestrak Unemployment Compensation Case. Susquehanna Collieries Division of the M. A. Hanna Company, Appellant, *v.* Unemployment Compensation Board of Review.

Argued March 8, 1960; reargued June 15, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*S. Keene Mitchell, Jr.,* with him *Bedford, Waller, Griffith, Darling & Mitchell,* for employer, appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

OPINION PER CURIAM, September 20, 1960:

The three appeals before us involve claims for unemployment compensation during a vacation period.

Roman S. Piestrak, Marlin J. Marose, and Charles Whary, along with a number of others whose claims are dependent upon these cases, were employed by the

Susquehanna Collieries Division of the M. A. Hanna Company.

In accordance with the collective bargaining agreement between the employer and the United Mine Workers of America, the claimants' union, the collieries at which the claimants were employed closed for vacation between June 28 and July 12, 1958. The claimants received vacation allowance from their employer on June 27, 1958, in varying amounts determined by a method provided in the collective bargaining agreement.[1] Piestrak, whose wages were $4683.22 during the previous year, receiver $140 vacation pay; Marose, whose wages were $2778.58, received $116; and Whary, whose wages were $2243.48, received $93.

The employer has appealed from an order of the Unemployment Compensation Board allowing the claimants unemployment compensation in addition to the vacation allowance.

The question is: Are the claimants entitled to unemployment compensation for the vacation period during which they performed no services, and if they are, how is the amount of the compensation to be calculated?

Section 4(u) of the Unemployment Compensation Law, as amended, 43 P.S. §753(u), provides, inter alia, "An individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him . . ."

---

[1] The vacation allowance was fixed at a maximum of $140 which was paid to employes who had worked in each of the 24 semi-monthly pay periods in the year immediately preceding the vacation period. The employes who had not worked in all of the 24 pay periods received a pro rata share of the $140 based upon the actual number of pay periods in which they did work.

This Court held in *Fazio Unemployment Compensation Case*, 164 Pa. Superior Ct. 9, 12, 63 A. 2d 489 (1949), that an employe is not unemployed under the above provision, if he receives remuneration with respect to the period in question, whether or not he renders any service during that period.

The question of unemployment compensation during a vacation period was before this Court in the *Mattey Unemployment Compensation Case*, 164 Pa. Superior Ct. 36, 63 A. 2d 429 (1949). We held that the claimant was not entitled to benefits during a vacation period provided for in a collective bargaining agreement entered into by the claimant's union, even though the claimant received no vacation allowance. President Judge RHODES, speaking for a unanimous Court, said: "Although the employer consented to the vacation, the leaving or absence from work was entirely voluntary on the part of the claimant, there being a total absence of compulsion." p. 41. Furthermore, it was there held that the claimant was not "available" for work in that a person on vacation was not "actually and currently attached to the labor force."

In two cases decided in 1954, unemployment compensation was denied by this Court because the claimants received vacation pay for the period, or because the idleness was deemed voluntary and the claimants were deemed not to be available for suitable work. *Hoenstine Unemployment Compensation Case*, 176 Pa. Superior Ct. 306, 106 A. 2d 639; and *Shadowens Unemployment Compensation Case*, 177 Pa. Superior Ct. 49, 110 A. 2d 258. See also *Santus Unemployment Compensation Case*, 177 Pa. Superior Ct. 496, 110 A. 2d 874 (1955).

The following year the legislature amended section 4(u), supra, by adding thereto the following: "Notwithstanding any other provisions of this act, an em-

ploye who is unemployed during a plant shutdown for vacation purposes shall not be deemed ineligible for compensation merely by reason of the fact that he or his collective bargaining agents agreed to the vacation. No employe shall be deemed eligible for compensation during a plant shutdown for vacation who receives directly or indirectly any funds from the employer as vacation allowance." Act of March 30, 1955, P. L. 6, 8.

The legislature intended thereby to change the law as stated in the above cases and, under certain circumstances, to allow unemployment compensation during vacation periods. Thus, employes on vacation are now to be deemed attached to the labor market and available for suitable work. Furthermore, the absence of an employe from work is no longer to be considered voluntary on the ground he agreed to the vacation without pay. But, as the last sentence of the above amendment clearly states, the legislature did not intend to give compensation during a vacation period to those who received any vacation allowance.

The appellant syllogizes: The act says employes are ineligible for compensation during a plant shut down for vacation if they receive *any funds* from their employer as vacation allowance; the claimants received funds from their employer as vacation allowances; therefore the claimants are ineligible for compensation. It argues that the words of the statute are clear and free from all ambiguity, and that the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 P.S. §551; *Farmers-Kissinger Market House Co. v. Reading,* 310 Pa. 493, 498, 165 A. 398 (1933).

Of course, the legislature does not intend an absurd result, §52 of the Statutory Construction Act, su-

pra, 46 P.S. §552, so we cannot interpret the amendment to either deny or allow compensation where to do so would be absurd or unreasonable.

Seeking to find a reasonable application of the statute, we held in *Myers Unemployment Compensation Case,* 186 Pa. Superior Ct. 227, 142 A. 2d 774 (1958), that where the vacation allowance during a plant shut down for *two* weeks vacation was substantially the same as the claimant's average weekly wage, he was entitled to compensation during the second week.

We said there on page 233, ". . . if by collective bargaining agreement, or otherwise, an employer were to shut down his plant for three weeks and allow $15 vacation allowance for the entire period, it would be an unreasonable interpretation of legislative intent to hold that the employer was thus able to disqualify his employes from receiving compensation for all of the three weeks while his plant was shut down."

We rejected there, as we do here, the contention that a bargaining agreement setting forth the period to be covered by the vacation allowance controls the period for which the employe is ineligible for compensation. "The collective bargaining agreement should not control in determining the eligibility of a retired employe for unemployment compensation; *rather, the factual matrix at the time of separation should govern,"* said Mr. Justice Cohen in *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 551, 153 A. 2d 906 (1959). This rule, there stated in a retirement case, we believe, is applicable in a vacation allowance case.

In both the *Myers Unemployment Compensation Case,* supra, and the *Schuster Unemployment Compensation Case,* 186 Pa. Superior Ct. 224, 142 A. 2d 772 (1958), we ignored the collective bargaining agreement

designation of the period covered by the vacation allowance, and determined the period on the basis of the "factual matrix." In both cases we determined the vacation period for which we considered wages to have been received by dividing the vacation allowance by the average weekly wage.

In the cases now before us, the board determined the number of days of the vacation period to which it applied the vacation allowance by dividing the vacation allowance by the employe's regular full-time daily wage. The regular full-time daily wage of Piestrak was found to be $24.28. The board divided this sum into the $140 allowance which gave 5 (days) with $18.60 left over. Ignoring the holiday, the board then applied $121.40 of the vacation allowance to the first week of the vacation period and $18.60 to the second week. This calculation entitled Piestrak to $23 unemployment compensation for the second week of the vacation period. We might note here that the average weekly wage of Piestrak received from his employer during the year immediately preceding the vacation period was $90.06 (52 weeks into $4683.22 annual wages). In using $121.40 the board applied to these vacation allowance cases the principle of *McAllister Unemployment Compensation Case,* 191 Pa. Superior Ct. 289, 156 A. 2d 546 (1959), in which we used the full-time weekly wage method to determine the weekly benefit rate under §404(a). The determination of the vacation period covered by the vacation allowance to which §4(u) is applicable, and the determination of the weekly benefit rate under §404(a) are different problems which do not necessarily involve the same principles, especially if their application leads to unreasonable results. Here a claimant, whose wages during the past year average $90.06 per week, is given unemployment compensation during a two week vaca-

tion period for which he received $140. In the light of the last above quoted sentence of the 1955 amendment to §4(u), this does not appear to be the intent of the legislature. We question whether the principle of the *McAllister* case can properly be used in determining the period covered by a vacation allowance.

Prior to the board's ruling in these cases, eligibility for compensation in vacation cases was determined by dividing the number of vacation days into the amount of vacation allowance and thus determining a weekly wage for the vacation period. In the case of those employes receiving the maximum vacation allowance, the board, ignoring the holiday, which raises another question, divided the usual ten working days in the vacation period into the $140 allowance, making a vacation allowance of $14 per day, which multiplied by 5 working days, made a weekly allowance of $70. An employe receiving wages of $70 per week is not entitled to unemployment compensation.

We have frequently said that it was not the intent of the Unemployment Compensation Law to create a fund for double payments so that for the same period of idleness, an employe could receive both remuneration from his employer and unemployment compensation, and that §4(u) of the Unemployment Compensation Law has as its specific purpose the *prevention* of payments of benefits during periods of idleness where the claimant has received remuneration which relates thereto. See the *Hoenstine, Santus* and *Schuster Unemployment Compensation* cases cited above. Although this Court's reference to "double payments" may have more limited application since the *Gianfelice Unemployment Compensation Case,* supra, we believe it still is applicable to cases involving vacation allowances.

Some meaning must be given to the legislature's direction that *"No* employe shall be deemed eligible for

compensation *during a plant shutdown for vacation* who receives directly or indirectly *any* funds from the employer as vacation allowance." (Emphasis supplied). If this legislative direction is applied literally the injustice referred to in the *Myers Unemployment Compensation Case,* supra, would result. If the legislative direction is ignored, as appears to have happened in these appeals, the intent of the legislature is being thwarted by unlawful judicial usurpation of a legislative prerogative. Somewhere between these extremes must be found a rule of interpretation which will bring reasonable results and will carry out the legislative intent. Perhaps the rule which the board formerly applied is better than the one which it used here.

To decide this involves judicial policy as well as the interpretation of statutory and decision law. Three of the judges of this Court would affirm and four would reverse. The four who would reverse cannot agree upon the formula which should be applied in these cases. The decision to be made on this point corresponds in importance with those questions in the field of unemployment compensation upon which the Supreme Court has recently spoken, such as those relating to retirement pay, willful misconduct, strike-lockout, and pregnant employes. We deem it advisable to have this matter dealt with by our Highest Court.

We therefore certify these appeals to the Supreme Court.

———

DISSENTING OPINION BY WRIGHT, J.:

I am not in accord with the conclusion that these appeals should be certified to the Supreme Court. The legislature has given us jurisdiction in unemployment compensation cases, and I feel very strongly that it is our duty to decide them.

The question of allocation of vacation allowances was before us in *Myers Unemployment Compensation Case*, 186 Pa. Superior Ct. 227, 142 A. 2d 774. We therein held that the sum paid by the employer for a two-week vacation period was properly allocated to the first week in the amount of claimant's average weekly wage, and the balance to the second week. That is precisely what the Unemployment Compensation Board of Review has done in the instant cases. It is therefore my view that the decisions should be affirmed.

GUNTHER and WATKINS, JJ., join in this dissent.