Commonwealth ex rel. Simon, Appellant,
*v.* Maroney.

614

Argued April 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Martin Lubow,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for appellee.

*Thomas M. Cooley, II* and *Majorie Hanson Matson,* for amicus curiae.

OPINION BY WOODSIDE, J., June 15, 1961:

When 18 years of age, John Simon, the petitioner in this habeas corpus case, raped two young girls and robbed three women, brutally clubbing two of them. He made a hood of overalls, and wore it over his head while committing the crimes. He had previously been in Juvenile Court as a result of his involvement in other serious law violations. He was apprehended, and on June 18, 1942, he was sentenced to a total of 20 to 40 years. Simon had an I.Q. of 59. He was, and is, recognized by the court and prison psychologists and psychiatrists as a potentially dangerous person of high moron intelligence.

When sentenced, he was not represented by counsel. The question here is whether he was deprived of due process of law by the acceptance of his uncounseled plea.

The Sixth Amendment to the Federal Constitution requires the assignment of counsel to defendants charged with crime in the federal courts, but neither the federal nor the State constitution requires that counsel be furnished to defendants charged in Pennsylvania courts with noncapital offenses, *Commonwealth*

*ex rel. Diggs v. Banmiller,* 191 Pa. Superior Ct. 101, 155 A. 2d 402 (1959); *Commonwealth v. Asher,* 181 Pa. Superior Ct. 80, 83, 124 A. 2d 701 (1956); *Gallegos v. Nebraska,* 342 U.S. 55, 72 S. Ct. 141, 96 L. Ed. 86, 94 (1951).

There is no lack of due process in the failure to appoint counsel in a noncapital case unless it is established that for want of benefit of counsel an ingredient of unfairness operated in the process that resulted in the prisoner's sentence. *Foster v. Illinois,* 332 U.S. 134, 67 S. Ct. 1716, 91 L. Ed 1955, 1958 (1947); *Commonwealth ex rel. Gant v. Banmiller,* 195 Pa. Superior Ct. 417, 171 A. 2d 603 (1961).

There is a strong presumption of regularity in a judgment of conviction for crime, and the longer the judgment stands, the stronger the presumption becomes. *Commonwealth ex rel. Savage v. Hendrick,* 179 Pa. Superior Ct. 601, 603, 118 A. 2d 233 (1955). The burden is upon appellant to prove his case. *Commonwealth v. Kadio,* 179 Pa. Superior Ct. 196, 199, 115 A. 2d 777 (1955); *Commonwealth ex rel. Diggs v. Banmiller,* supra, 191 Pa. Superior Ct. 101, 155 A. 2d 402 (1959).

In determining whether the ingredient of unfairness exists, each case depends on its own facts. *Uveges v. Pa.,* 335 U.S. 437; 69 S. Ct. 184, 93 L. Ed. 127 (1948). "The asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial." *Betts v. Brady,* 316 U.S. 455, 462, 62 S. Ct. 1252, 1256, 86 L. Ed. 1595, 1602 (1942); *Commonwealth ex rel. Popovich v. Claudy,* 170 Pa. Superior Ct. 482, 486, 487, 87 A. 2d 489 (1952). Youth and inexperience, coupled with a serious charge, do not per se establish unfair-

ness. *Commonwealth v. Kadio,* supra, 179 Pa. Superior
Ct. 196, 199, 115 A. 2d 777 (1955) ; *Commonwealth ex
rel. Popovich v. Claudy,* supra. Nor is the low men-
tality of the prisoner sufficient to establish an element
of unfairness. *Commonwealth ex rel. Ringer v.
Maroney,* 177 Pa. Superior Ct. 509, 110 A. 2d 801
(1955).

Simon did not meet the burden of showing a denial
of due process. The court found that he had been told
that the court would assign him a lawyer and that he
had not requested that one be appointed. The record
supports these findings. Thus, not only did the peti-
tioner fail to meet the burden, but the evidence indi-
cates that he knew the court would assign him counsel
and that he did not desire counsel.

The able sentencing judge showed serious concern
for this defendant. He did not impose sentence until a
thorough investigation had been made, and a complete
report had been received from the Behavior Clinic
operating under the direction of the court.

We have carefully examined the record of this case
and find that prior to sentence the court made every
effort to obtain all the relevant information concerning
the defendant which could aid in the imposition of a
fair sentence. An examination of the record leaves no
doubt of the prisoner's guilt, and that the safety of
the prisoner and the public demanded a lengthy im-
prisonment. President Judge McNAUGHER, who sen-
tenced the petitioner and heard this habeas corpus case,
is known to this Court and to the people of his county
as one of the fairest and ablest trial judges of this
Commonwealth.

In 1952, Simon, represented by counsel, applied for
a writ of habeas corpus raising the same question he
raises here and was denied the writ. He applied to the
Pennsylvania Board of Pardons four times for a com-
mutation of his minimum sentence, and each time, after

·the thorough independent examination always made by the board, his petition was denied. Three times his petition for commutation was argued by counsel who had extensive experience before the board. Numerous exhibits and over 300 pages of testimony were taken in the habeas corpus hearing now before us. From the day of this petitioner's arrest to the present time, numerous officials of this Commonwealth have checked and rechecked, investigated and reinvestigated, reviewed and rereviewed, examined and reexamined every fact and every circumstance of these crimes, and every circumstance of the proceedings in which he pleaded guilty and was sentenced, and every physical, mental and emotional characteristic of the petitioner.

Considering the "totality of facts" in this case— the unquestioned guilt of the prisoner, and the endless efforts of the courts and other officials to see that the petitioner was fairly treated and sentenced,—it would be error to release this dangerous prisoner to again prey upon the women and children of our Commonwealth. The courts have a duty to protect helpless people from attack by vicious criminals as well as to protect those persons who are accused of crime.

For the above reasons, and for the additional reasons set forth in the opinion of President Judge Mc-NAUGHER, reported in 24 Pa. D. & C. 2d 377 (1960), the order refusing the writ is

Affirmed.

---

DISSENTING OPINION BY FLOOD, J.:

The circumstances here present a picture where, in my opinion, failure to appoint counsel invalidates the plea and the sentence, even though no request for counsel was made by the defendant or even if he said he did not want counsel.

The trial judge took a great deal of care with this case, and there can be no reasonable doubt that the defendant committed the acts for which he is serving his sentence. His sentence seems to be a reasonable one for this atrocious series of crimes, if he was mentally responsible for his acts. The evidence indicates that he may well have been mentally responsible for his criminal activity as our law defines responsibility.

But the law requires less mental capacity for criminal responsibility than it does for conducting or defending a case in court.

The fact that "defective delinquents" may be found guilty of crime is recognized in our statutes, but provision is made for their treatment in a specialized institution (61 PS §541-1) although the fact of their classification as criminals allows their detention in penitentiaries or other penal institutions when they cannot be accommodated in the specialized institution. This was recognized by the trial judge here and defendant would have been committed to the Institution for Defective Delinquents at Huntingdon, it appears, if he had not been over the age limit for the institution.

For mental responsibility for crime, the M'Naghten rule requires no more than the ability to distinguish between right and wrong and this does not mean the ability on the part of the defendant to come to a theological or philosophic conclusion on the subject. It means merely that he knows that his act is one for which he will be liable to be punished if he is caught, and that he has enough intelligence so that he would not commit the act if he knew a policeman were watching him. I cannot see how it can be said that this minimum of intelligence is sufficient to enable the defendant to properly defend himself in criminal proceedings or intelligently waive his right to have counsel represent him.

This defendant was classified by the court clinic doctor, a psychiatrist, as a moron. This classification is included in the Mental Health Act of 1951 among the class of mental defectives who have "not acquired enough self-control, judgment and discretion to manage" themselves and their affairs. Act of June 12, 1951, P. L. 533, §102(9), 50 PS §1072(9).

Our whole system of court trial has for one of its premises that a party's interests are best served by representation by legal counsel. If he does not have the "judgment and discretion" to waive it intelligently (and the legislature in the Mental Health Act says a moron does not) in a case such as this I think the choice must be made for him by the judge, and that choice must be that he be represented by counsel.

Even in ordinary civil cases when the court ascertains that a party is a weak-minded person a guardian must be appointed or the action stayed unless a guardian is appointed, and a judgment entered against a weak-minded defendant without a guardian may be vacated. Pa. R. C. P. 2056.

It makes no difference in my opinion that the defendant would most likely have been convicted even if he had counsel, that there was little or no doubt that he committed the acts, and that the only real question before the court would probably be what disposition should be made of the defendant. We cannot assume that competent counsel could not have convinced the court that a defendant with such dim intelligence was not mentally responsible. If he did not, we cannot assume that he would not have persuaded the court to make a different disposition of such a weak-minded defendant upon conviction.

In my opinion, counsel should always be appointed for a defendant in a criminal case who is a mental defective under the definition in Pennsylvania Mental

Health Act. When that mental defective stands accused of two forcible rapes and two robberies, has never appeared in criminal court before, even though he has some experience in the juvenile court, is eighteen years old, and is practically, though not completely, illiterate, with a limited education, the "should" becomes a "must" for due process.

The law on this point had, of course, not developed at the time of this trial in 1941 to the point that it has reached today in the definition of constitutional requirements. Even yet, no cases we have seen had precisely this question before them. But in my opinion, the course laid down by the Supreme Court of the United States in *Uveges v. Pennsylvania,* 335 U. S. 437 (1948) and *Moore v. Michigan,* 355 U. S. 155 (1957), leads directly to the conclusion that the trial here lacked due process in the failure to appoint counsel for the defendant. Apart from the Fourteenth Amendment to the Constitution of the United States, the Pennsylvania Constitution in Article I, §9, provides that "in all criminal prosecutions the accused hath a right to be heard by himself and his counsel." This is, of course, a right personal to himself which he may waive. But such waiver must be intelligently made to be effective. The defendant here was not competent, according to the Mental Health Act, to exercise the necessary judgment and discretion to make this transcendently important decision in the management of his affairs.

I would grant the writ and award a new trial.