Commonwealth ex rel. Goodfellow, Appellant, *v.* Rundle.

420

Submitted December 10, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Thomas F. Goodfellow,* appellant, in propria persona.

*Thomas A. Pitt, Jr.,* Assistant District Attorney, and *Samuel J. Halpren,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., June 23, 1964:

This is an appeal from the refusal of the Court of Common Pleas of Chester County to grant a writ of habeas corpus to Thomas F. Goodfellow, a prisoner in a state correctional institution who is serving a sentence imposed in January, 1959, of 3½ to 7 years on prison breach and a concurrent sentence of 1 to 2 years for larceny. Goodfellow had entered a plea of guilty on each charge. The petitioner alleges that he was not

represented by counsel "nor did the court offer any assistance of counsel." The petitioner does not allege that he requested counsel nor that he was unable to obtain counsel for lack of funds or any other reason. He does allege that "an element of unfairness actively operated against him by reason of the fact the court failed to appoint him or even inquire of him whether he had counsel." There is no allegation of facts relating to an element of unfairness except the bald assertion that he had no counsel and none was offered him.

The court below examined the record and heard argument, but it did not take testimony. It concluded that the "petitioner made no request that the court appoint counsel to represent him, that he had a long and varied previous experience with the criminal law in the light of which he admitted his guilt of the offenses charged by entry of his pleas of guilty, and that no ingredient of unfairness entered into the cases . . ."[1] From the dismissal of the petition Goodfellow appealed to this Court.

## Similar Cases

This is one of numerous petitions for writs of habeas corpus being filed by prisoners who allege that their constitutional rights were violated at the time of their sentence because they were not represented by counsel. Although there has long been a continuous stream of petitions for writs of habeas corpus flowing from our correctional institutions, the number has approached flood proportions since the Supreme Court of the United States filed its opinion in *Gideon v. Wain-*

---

[1] In addition to the escape and theft for which he is now serving time, Goodfellow had previously been convicted for larceny of an automobile in 1938, for larceny in 1939, for pointing and discharging a firearm in 1945 and for assault with intent to rob in 1947.

*wright,* 372 U.S. 335, 83 S. Ct. 792, 9 L. ed. 2d 799 (1963).

Because of changing constitutional concepts, trial judges are frequently and understandingly uncertain of the procedure to be followed and the legal tests to be applied in the numerous habeas corpus cases now before them. As many of the cases pending before us lack distinguishing characteristics, we have decided to set forth at length in this opinion our view of the law on this subject, the procedure to be followed, and the tests to be applied. It is not to be presumed that this opinion will put to rest the numerous questions which arise from the new constitutional concepts expressed in *Gideon v. Wainwright,* supra. All manner of legal problems will inevitably continue to follow in its wake for years to come. We shall set forth here only a few principles which we deem applicable to this problem. We trust these principles will serve as guide lines for the trial courts and aid them in the disposition of the numerous cases now pending before them.

The counsel cases now before the Pennsylvania courts are important. The determination of constitutional rights is always important. A prisoner's freedom is certainly important to him. The premature release of many unrehabilitated criminals is important to the people of this Commonwealth. Furthermore, the mere number of cases makes this determination of utmost importance. There are hundreds, possibly thousands, of prisoners involved.[2] We have given this case

---

[2] There are nearly a hundred cases pending in our appellate courts. There are probably hundreds pending or recently decided in the common pleas courts. In 1953 there were 735 petitions for writs of habeas corpus filed for all purposes by the prisoners in Pennsylvania state prisons.

According to the calculation of the Pennsylvania Board of Parole on March 26, 1964, there were 35 prisoners in state institutions who had sentences set aside by habeas corpus proceedings because they had had no counsel when sentenced. Of this number,

and its companion cases the consideration which their importance demands.

As these decisions are of vital importance to the Commonwealth, we are certifying this case along with our views to the Supreme Court for disposition.

## Constitutional Provisions

Art. I, §9 of the Constitution of Pennsylvania provides, inter alia, "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, . . ."

The Sixth Amendment to the Constitution of the United States provides, inter alia, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

The Fourteenth Amendment to the Constitution of the United States provides, inter alia, that no state shall "deprive any person of life, liberty, or property, without due process of law; . . ."

## Practice in Federal Courts

From 1791, when the first ten Amendments to the Federal Constitution were adopted, until 1938, the right conferred on the accused by the Sixth Amendment to have the assistance of counsel was generally understood as meaning that in the federal courts the defendant in a criminal case was entitled to be represented by counsel *retained* by him. It was assumed, although not expressly decided, that this constitutional privilege did not comprise the right of a prisoner

---

8 were set aside by the Bradford County Court, 8 by the Washington County Court, and 7 by the Philadelphia County Courts. The remaining 12 were from the other 64 counties. Of the 35 sentences set aside, 26 (over 70%) were for 10 years or more.

There are many prisoners now on parole who if returned to prison can be expected to file petitions for writs on the ground they had no counsel when their original sentences were imposed.

to have counsel *assigned* to him by the court if, for financial or other reasons, he was unable to retain counsel. See *Bute v. Illinois,* 333 U.S. 640, 661, 68 S. Ct. 763, 92 L. ed. 986 (1948).

In 1938, the United States Supreme Court held for the first time that "The Sixth Amendment withholds from federal courts, in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel." *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S. Ct. 1019, 82 L. ed. 1461 (1938). The petitioner in that habeas corpus case had been arraigned, tried, convicted and sentenced without counsel. He had no prior record, had pleaded not guilty and had advised the court he had no counsel. He had been prosecuted in a state where he did not reside and had no relatives, friends or acquaintances. The United States District Court, holding that habeas corpus was not an appropriate remedy, did not consider whether counsel should have been appointed to defend him at his trial. The United States Supreme Court remanded the case for the taking of testimony on the question of whether the petitioner had waived counsel and for action in harmony with the opinion.

In *Johnson v. Zerbst,* supra, there had been a trial following a plea of not guilty, but the constitutional requirement for the appointment of counsel was later held to apply in federal cases where the accused pleaded guilty. *Walker v. Johnston,* 312 U.S. 275, 286, 61 S. Ct. 574, 85 L. ed. 830 (1941); *Von Moltke v. Gillies,* 332 U.S. 708, 68 S. Ct. 316, 92 L. ed. 309 (1948). On March 21, 1946, the United States Supreme Court adopted a rule providing for the appointment of counsel in federal cases.[3]

---

[3] "Rule 44. Assignment of Counsel. If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of

Federal prison doors were not opened by *Johnson v. Zerbst,* supra, although a flood of petitions for writs of habeas corpus were promptly filed by federal prisoners. There probably were two reasons for this. First, the federal courts held that a waiver of counsel was implied in the cases of prisoners who were sentenced prior to 1938. *Macomber v. Hudspeth,* 115 F. 2d 114 (C.C.A. 10th, 1940), cert. den. 313 U.S. 558, 61 S. Ct. 833, 85 L. ed. 1519 (1941); *Buckner v. Hudspeth,* 105 F. 2d 396 (C.C.A. 10th, 1939), cert. den. 308 U.S. 553, 60 S. Ct. 99, 84 L. ed. 465 (1939). Second, the results obtained by one of the first prisoners to take advantage of the new interpretation must have dampened the enthusiasm of other prisoners for a new trial. Robinson, a prisoner at Alcatraz, filed his petition for a writ of habeas corpus in 1939 citing *Johnson v. Zerbst* and alleging that he had not been represented by counsel when sentenced to life imprisonment under the Lindbergh Act. He finally obtained a new trial. *Robinson v. Johnston,* 50 F. Supp. 774 (1943). At the retrial, represented by counsel, he was again convicted and this time sentenced to death. The death sentence was affirmed by the Sixth Circuit Court of Appeals, *Robinson v. United States,* 144 F. 2d 392 (1944), and by the Supreme Court of the United States in an opinion by Mr. Justice BLACK, 324 U.S. 282, 65 S. Ct. 666, 89 L. ed. 944 (1945). Apparently Robinson was still petitioning the Supreme Court for reconsideration of his sentence in 1958. See 356 U.S. 978, 78 S. Ct. 1133, 2 L. ed. 2d 1145. Recently this Court affirmed a sentence imposed after retrial that was more severe than the original sentence. See *Commonwealth v. Davis,* 203 Pa. Superior Ct. 79, 198 A. 2d 649 (1964).

---

the proceeding unless he elects to proceed without counsel or is able to obtain counsel." It did not intend to impose this rule upon state courts. See *Bute v. Illinois,* supra, 333 U.S. 640, 662, 663, 68 S. Ct. 763, 92 L. ed. 986.

Although the United States Supreme Court held that the Sixth Amendment required an indigent accused to be assigned counsel in federal courts unless he waived the right, it held that the Federal Constitution did not require assignment of counsel to an indigent accused in state courts except in cases of unusual circumstances. *Betts v. Brady,* 316 U.S. 455, 62 S. Ct. 1252, 86 L. ed. 1595 (1942). This was the law as set forth by the United States Supreme Court until 1963 when *Gideon v. Wainwright,* supra, was decided.

## The Pennsylvania Rules

The appellate courts of Pennsylvania have held for many years that it is the duty of a judge presiding at the trial of a criminal prosecution to inform a defendant who appears for trial without counsel that he has a constitutional right to counsel, and that the failure to so inform a defendant being tried or to appoint counsel for him is fundamental error. *Commonwealth v. Richards,* 111 Pa. Superior Ct. 124, 169 A. 464 (1933); *Commonwealth v. Jester,* 256 Pa. 441, 100 A. 993 (1917); *Commonwealth v. Cohen,* 123 Pa. Superior Ct. 5, 186 A. 203 (1936). If a defendant is tried and sentenced without compliance with this rule, the question can be raised by habeas corpus. *Commonwealth ex rel. Schultz v. Smith,* 139 Pa. Superior Ct. 357, 11 A. 2d 656 (1940). There is, however, a presumption of regularity which imposes upon the petitioner in a habeas corpus action the burden to establish that he did not waive counsel. *Commonwealth ex rel. McGlinn v. Smith,* 344 Pa. 41, 24 A. 2d 1 (1942).

The rule established by these cases relates to trials, and not to cases where the accused pleads guilty. Our courts consistently held that the Constitution of Pennsylvania does not require the court to assign counsel

to persons pleading guilty to noncapital offenses. *Commonwealth ex rel. Ringer v. Maroney,* 177 Pa. Superior Ct. 509, 110 A. 2d 801 (1955). To invalidate a plea of guilty in a noncapital case by reason of denial of due process of law arising from a failure to have provided a prisoner with counsel, the prisoner was required to establish that an ingredient of unfairness actively operated in the process that resulted in his confinement. *Commonwealth ex rel. Johnson v. Burke,* 174 Pa. Superior Ct. 119, 121, 100 A. 2d 125 (1953); *Commonwealth ex rel. Pitchcuskie v. Banmiller,* 194 Pa. Superior Ct. 534, 536, 168 A. 2d 636 (1961). The Supreme Court of the United States refused many times to review the Pennsylvania courts' position on this subject.

It was within the discretion of the trial judge to appoint counsel when pleas of guilty were entered. In cases where the trial judge feared an injustice might result if the accused were not represented, he generally appointed counsel. Frequently, however, when a plea of guilty was entered and the accused faced no legal problem in determining his guilt which he freely admitted in open court, the trial judge did not appoint counsel. When an accused appeared without counsel, the conscientious judge took care to assure himself of the guilt of the defendant and made an effort to determine the facts which would influence the length of incarceration.

To summarize: In applying the principles of due process and of Art. I, §9 of the Pennsylvania Constitution, the courts of this Commonwealth held that: (1) where a plea of not guilty was entered by the accused, it was the duty of a judge presiding at the trial of a criminal prosecution to inform a defendant who appeared without counsel that he had a constitutional right to counsel, and that the failure to so inform a defendant being tried or to appoint counsel for him

was fundamental error; (2) where the accused pleaded guilty, it was within the discretion of the trial court to appoint counsel, and that the failure to appoint counsel was reversible error only if it was established that an ingredient of unfairness actively operated in the process that resulted in the defendant's confinement.

Pennsylvania had applied not only the specific provision of Art. I, §9 of the Pennsylvania Constitution relating to counsel, but had also applied the test of due process of law to cases relating to the appointment of counsel. *Commonwealth ex rel. Johnson v. Burke,* supra, 174 Pa. Superior Ct. 119, 100 A. 2d 125 (1953); *Commonwealth ex rel. Curtis v. Ashe,* 139 Pa. Superior Ct. 417, 12 A. 2d 500 (1940).

## Gideon v. Wainwright

These were the rules and practice in Pennsylvania when a year ago, on March 18, 1963, the Supreme Court decided *Gideon v. Wainwright,* supra, 372 U.S. 335, 83 S. Ct. 792, 9 L. ed. 2d 799, which reversed *Betts v. Brady,* supra, 316 U.S. 455, 62 S. Ct. 1252, 86 L. ed. 1595 (1942), and held that the Due Process Clause of the Fourteenth Amendment made the right of an accused to have the assistance of counsel, as set forth in the Sixth Amendment to the Constitution of the United States, applicable to prosecutions in state courts.

*Gideon v. Wainwright,* supra, was a habeas corpus case which reached the Supreme Court of the United States from the Supreme Court of Florida. The petitioner, having been charged with a felony, appeared in court "without funds and without a lawyer" and "asked the court to appoint counsel for him" which the trial judge refused to do. The accused was thereupon tried before a jury, convicted and sentenced. He subsequently petitioned in the Florida courts for a

writ of habeas corpus and was refused relief. The Supreme Court of the United States reversed the Supreme Court of Florida and remanded the case "for further action not inconsistent with this opinion."

Had facts similar to those before the Supreme Court of the United States in *Gideon v. Wainwright* been presented to the appellate courts of this Commonwealth even *prior* to the decision of that Court in that case, there is no doubt that under the law of this Commonwealth the case would have been remanded to the court below for retrial. See Pennsylvania cases cited above.

How then did *Gideon v. Wainwright* change the law applicable to cases tried in our courts? Does it compel the courts of this Commonwealth to set aside the sentences of all prisoners who appeared in our courts without funds and without counsel and pleaded guilty, and whose judgments of sentences became final prior to March 18, 1963, the date when *Gideon* was filed by the United States Supreme Court?

Cases Subsequent to Gideon v. Wainwright

Between April 22, 1963, and October 21, 1963, the United States Supreme Court granted certiorari in over 40 counsel cases of which approximately 30 originated in Florida. It wrote no opinion but vacated the judgments and remanded the cases "for further consideration in light of Gideon v. Wainwright." Three of these cases were to the Pennsylvania courts. *Weigner v. Russell,* 372 U.S. 767, 83 S. Ct. 1104, 10 L. ed. 2d 138 (1963); *Garner v. Pennsylvania* and *Vecchiolli v. Maroney,* 372 U.S. 768, 83 S. Ct. 1105, 10 L. ed. 2d 138 (1963).

It has been suggested that by vacating the judgments and remanding the cases "for further consideration in the light of Gideon v. Wainwright," the United

States Supreme Court is directing that the sentences imposed upon the defendants in these cases, are to be vacated. The United States Supreme Court did not go that far. The remands do not amount to final determinations on the merits. They indicate only that the Supreme Court considered *Gideon* sufficiently analogous and, perhaps, decisive to compel re-examination of these cases. *Henry v. City of Rock Hill*, 376 U.S. 766, 84 S. Ct. 1042, 12 L. ed. 2d 79 (1964).

One of the most recent cases before the United States Supreme Court on petition for certiorari was *Commonwealth ex rel. Simon v. Maroney*. In that case, Simon, age 18 with an intelligence quotient of 59, pleaded guilty to three robberies and two rapes and was sentenced in 1942 in Allegheny County without being represented by counsel. He made no request to the court to have counsel appointed. It did not appear that the court told Simon counsel would be appointed for him. There was evidence that when Simon was sentenced, it was the practice in Allegheny County to announce to the prisoners as they came into the courtroom for arraignment that if they asked for an attorney one would be supplied. There was also evidence that a fellow prisoner had told Simon prior to sentence that he could have counsel assigned to him if he requested it. The Court of Common Pleas of Allegheny County refused the writ. We affirmed with Judge FLOOD dissenting. 195 Pa. Superior Ct. 613, 171 A. 2d 889 (1961). The Supreme Court affirmed with Mr. Justice COHEN dissenting. 405 Pa. 562, 176 A. 2d 94 (1961). These decisions were *prior* to *Gideon*. Simon petitioned the Supreme Court of the United States for certiorari. On March 30, 1964, a year *after Gideon* was decided, the Supreme Court denied the certiorari with Mr. Justice DOUGLAS dissenting, 376 U.S. 966, 84 S. Ct. 1126, 11 L. ed. 2d 984. Thirty days later a federal district court judge ordered Simon released.

The refusal of certiorari does not mean that the United States Supreme Court affirmed the action of the Pennsylvania courts, but certainly it was not an indication that the Supreme Court of the United States thought Simon should be released. What law do *we* follow—that made by the Supreme Court of Pennsylvania which the United States Supreme Court was asked and refused to review or that made by a federal district court judge?

When federal district court judges "reverse" our Supreme Court in cases involving prisoners convicted in state courts, they are, in effect, reducing the Highest Court of this Commonwealth to a position one notch under the lowest subordinate federal court.[4] A judicial system which permits each judge of the lowest federal court of record to ignore and overrule the action of the Supreme Court of a state in cases arising in the state courts for violation of state laws constitutes *each* federal district judge a super-supreme court in practically all criminal cases,[5] and leads to endless confu-

---

[4] The year Simon was sentenced the law as then understood was set forth in *Commonwealth ex rel. McGlinn v. Smith*, supra, 344 Pa. 41, 50, 24 A. 2d 1 (1942) as follows: "The Supreme Court of the United States has declared in effect that a state's long established interpretation of its own constitution's 'due process' clause is entitled to respect by the Federal judiciary. In Otis Co. v. Ludlow Co., 201 U.S. 140, 154, Justice HOLMES speaking for the court said: 'We cannot wholly neglect the long settled law and common understanding of a particular state in considering the plaintiff's rights. We are bound to be very cautious in coming to the conclusion that the Fourteenth Amendment has upset what thus has been established and accepted for a long time.' In Interstate Railway Co. v. Massachusetts, 207 U.S. 79, 87, Justice HOLMES again speaking for the Court said: 'The traditions and habits of centuries were not intended to be overthrown when that Amendment was passed.'"

[5] Under the present practice, only the absence of ingenuity on the part of a prisoner or his lawyer (which neither ever seems to lack) keeps a petition for a writ from alleging a federal constitutional question.

sion and inequities.[6]

Of course, this anomalous practice is not a problem for this Court, and is noted here only because of our apparent choice of opposing rules, some made by the Supreme Court of Pennsylvania and others, the final ones, by judges of lower federal courts. We intend to follow, as we think we must, the decisions of the Supreme Court of Pennsylvania unless and until they are reversed by the Supreme Court of the United States.

Decisions of the United States Supreme Court, where relevant, are binding on all state courts and it goes without saying that we will follow such decisions even though they are in conflict with the law as determined by our own appellate courts. See *Duquesne City v. Fincke,* 269 Pa. 112, 117, 112 A. 130 (1920); *Commonwealth v. Conte,* 154 Pa. Superior Ct. 112, 115, 35 A. 2d 742 (1944). But decisions of *lower federal courts* are *not* binding on state courts even though a federal question is involved. *Breckline v. Metropolitan Life Insurance Co.,* 406 Pa. 573, 578, 178 A. 2d 748 (1962); *Hangelias v. Dawson,* 158 Pa. Superior Ct. 370, 374, 45 A. 2d 392 (1946).

The law of Pennsylvania to be applied to habeas corpus cases brought by prisoners whose judgment of

---

[6] The Supreme Court of the United States pointed out many years ago in *Martin v. Hunter's Lessee,* 14 U.S. 304, 1 Wheat. 304, 4 L. ed. 97 (1816) the "necessity of uniformity of decisions" stating that "Judges of equal learning and integrity . . . might differently interpret . . . the Constitution," and warned, "if there were no revising authority to control these jarring and discordant judgments, and harmonize them into uniformity, . . . the Constitution of the United States would be different in different States and might, perhaps, never have precisely the same construction, obligation, or efficacy, in any two States. The public mischiefs that would attend such a state of things would be truly deplorable . . ." In Pennsylvania we face the "truly deplorable" prospect of having as many super-supreme courts with as many different decisions as there are district judges.

sentence became final before *Gideon* would not be affected by that case if it is to be applied only prospectively. If the rule of *Gideon* is to be applied retroactively, we must examine how the practice which had been followed in Pennsylvania conflicted with the practice which the Supreme Court of the United States now says should have been followed. If all defendants in criminal actions, including those who pleaded guilty, were entitled to counsel unless they were not destitute or waived the right, we must decide what facts are necessary to establish the right of the prisoner to have his sentence set aside, and how those facts are to be established.

### Is Gideon to be Applied Retroactively?

Of course, if *Gideon* is to be applied only prospectively and not retroactively prisoners whose sentences became final prior to the filing of the opinion are not affected. In *Commonwealth ex rel. Craig v. Banmiller,* 410 Pa. 584, 588, 189 A. 2d 875 (decided April 16, 1963), our Supreme Court refused to set aside a conviction imposed more than 30 years ago upon a prisoner who had pleaded guilty without the assistance of counsel.[7] This indication by our Supreme Court that *Gideon* need not be applied retroactively was made within a month of the filing of the opinion in that case. Since that time, the Supreme Court of the United States has taken additional action which indicates that it intended the rule of *Gideon* to be applied retroactively.

---

[7] Subsequently, as in the *Simon* case, supra, a United States District Court judge overruled the action of our Supreme Court and granted the writ on August 19, 1963, *United States ex rel. Craig v. Myers,* 220 F. Supp. 762 (1963). This has recently been affirmed by the Circuit Court of Appeals in an opinion by Judge HASTIE.

## Future Pennsylvania Practice on Appointment of Counsel

Criminal Procedural Rules including those relating to the appointment of counsel have been in the process of preparation and promulgation for some time by the Criminal Procedural Rules Committee. They have recently been adopted by this Court and are now pending before the Supreme Court. They provide for appointment of counsel. Even without the rules, all trial courts should appoint counsel for indigent defendants.

## Effect of Wholesale Release of Prisoners

Under our system of government, the state laws and not the federal laws are designed to protect us from murderers, burglars, robbers and thieves. Criminal prosecutions in federal courts involving the protection of the person or property are di minimis.[8] It is the *state* law enforcement officials and the *state* courts which have the primary duty of protecting our homes from criminal invasions, our streets from violence, and our property from confiscation and destruction at the hands of criminals. As this responsibility rests upon

---

[8] It is reasonable to deduce from available statistics that the number of arrests and sentences for violation of state laws exceeds the number of arrests and sentences for violation of federal laws by a ratio in excess of 50 to 1. Accurate comparable statistics are difficult to come by, but the comparison of state and federal arrests would surprise many people. There are, for example, probably as many arrests made under state law in the city of Philadelphia alone as are made under federal law in all 50 states. There are approximately the same number sentenced to prison in Pennsylvania as are sentenced by the federal courts in all 50 states.

Although the federal government is now imposing upon the states nearly all important rules concerning law enforcement, they are bearing only an infinitesimal part of the burden of maintaining law and order and in protecting the public from criminals.

state governments, there is a natural tendency of state courts to balance the necessity to protect the people against criminals with the necessity to protect them against policemen. This does not mean that state judges lack either an understanding of constitutional rights or a desire to protect the accused from invasions of such rights. They, too, swear to support the Constitution of the United States.

Law cannot be applied in the abstract. Its application relates to and affects the lives of people. When courts change the law or "discover" for the first time that which they *presently* say always *was* the "law"—although nobody knew it before—people are affected. See Justice FRANKFURTER'S concurring opinion in *Griffin v. Illinois,* 351 U.S. 12, 25, 76 S. Ct. 585, 100 L. ed. 891 (1956), and Justice HARLAN'S dissenting opinion in *Pickelsimer v. Wainwright,* 375 U.S. 2, 3, 84 S. Ct. 80, 11 L. ed. 2d 41 (1963).

What man made law does to people should always be of the utmost concern to the law*maker,* whether he be judge or legislator.

What will be the effect on the citizenry if we or some other court were to release from prison those who pleaded guilty in Pennsylvania courts without counsel? In the first place, the release of these prisoners would have no effect upon any person now or hereafter accused of crime for we have held counsel must be appointed for the indigent accused unless he waives the right.

Who then would be affected by such ruling? The long term prisoners are most likely to benefit. Generally speaking, they are the most dangerous criminals—the recidivists,—those on whom the recognized means of reformation have been tried and have failed. We are not asked to set aside the sentences of these prisoners because they are innocent. There is probably no class of prisoner incarcerated in Pennsylvania about

whose guilt there is a greater degree of certainty. They all admitted their guilt in open court.

The trial judges of this Commonwealth are not lacking in conscience, wisdom and human compassion. The seriousness of the offenses of the prisoners involved coupled with the lack of counsel undoubtedly caused the sentencing judges to take special care in satisfying themselves of the guilt of these defendants and in obtaining all the facts which would influence them in the length of the sentences. It was rare, indeed, that counsel would not have been assigned an accused had one been requested. (*Commonwealth ex rel. Craig v. Banmiller,* supra, was one of the rare cases where a request appears to have been made and refused.)

These prisoners seek new trials *only* because the rules relating to their appearance in court were changed many years after their sentences were imposed. The courts of Pennsylvania had examined the Pennsylvania Constitution and the constitutional concepts of due process. After reviewing the decisions of the federal and state courts, it was decided that in noncapital cases where there was a plea of guilty, it was not necessary for the court to appoint counsel except when the failure to do so would involve an ingredient of unfairness. The Supreme Court of the United States considered this rule and decided that it was the law. See cases cited above. The trial judges applied the law as given them by the appellate courts.

The crimes of these prisoners were committed so long ago that the evidence necessary to reconvict many of them is no longer available, and they would be released if a new trial were granted. A new wave of violent crimes will inevitably follow. Men will be robbed, women raped, homes burglarized, and property stolen. Even when prisoners are believed to be rehabilitated, and are paroled under supervision, many return to a life of crime. When prisoners who are *known*

not to have been rehabilitated are released *without any supervision,* a great number of serious crimes are certain to be committed by them. In Florida 48 released prisoners were sentenced for new crimes in a matter of weeks after their release.[9]

It is reasonable to assume Pennsylvania will have many more crimes committed by a comparable number of those released from its prisons than Florida had. Many released in Florida were short term prisoners sentenced for minor offenses. Few Pennsylvania prisoners seeking release belong in this class. Here, as stated above, the serious offenders sentenced to long terms are the ones who have filed the petitions for writs.

### Rule Applicable to Pending Habeas Corpus Cases

The Supreme Court has not specifically said that it intends to carry over and apply to the state courts the entire body of federal law relating to the appointment of counsel. An accused who denies his guilt and stands trial is in much greater need for counsel than an accused who appears in open court and voluntarily admits his guilt of an easily understandable offense

---

[9] Between March 18, 1963, when *Gideon* was filed and February 1, 1964, 1126 inmates of Florida's prisons were granted writs because no counsel had been assigned to defend them. Of these, 321 were convicted when retried for the same offense. Twelve received longer sentences than they received originally. By February 1, 1964, 48 of those released had been sentenced for offenses committed since they left prison. Director of Corrections Wainwright thought this number was not high. (Speech at Florida State University on February 28, 1964) The prisoners were on the streets only a short time when they were apprehended for new offenses. There was no supervision of the released prisoners, so there is no information as to those who left the state and committed crimes elsewhere. Undoubtedly many of them committed crimes for which they were not apprehended. Others are certain to commit crimes in the months ahead.

about which he is fully aware. It is indeed question-
able in many such cases whether the defendant does
not do better with his own plea for mercy. The Su-
preme Court has not yet said specifically what should
be done in the case of an accused who pleaded guilty
under such circumstances in a state court prior to
*Gideon*. Nevertheless, we shall proceed, at this point,
upon the presumption that *Gideon* is to be applied
retroactively, and that the basic principles of law ap-
plicable to the appointment of counsel *in federal courts*
must be applied to habeas corpus cases in our courts.

In the light of this presumption, the rule which
should be applied to the habeas corpus cases brought
by prisoners who had admitted guilt is as follows: *If
the prisoner establishes in a habeas corpus case that
at the time of sentence he had no counsel and, because
of indigency or some other reason was unable to em-
ploy counsel, his sentence must be vacated unless he
waived the appointment of counsel.* If he was incom-
petent or lacked the intelligence to waive counsel, any
attempted waiver on his part would be a nullity.
Whether he was indigent and whether he waived coun-
sel are questions of fact to be determined in the first
instance by the court of common pleas.

### Cases Pending Before the Superior Court

It is important to emphasize that the habeas corpus
cases involving failure to appoint counsel which are
now pending in Pennsylvania courts and with which
we are here dealing arise from *prisoners who pleaded
guilty*. We are not here concerned with any case where
the petitioner entered a plea of *not guilty* and was
tried.

In a number of these cases before us, the record of
the Court of Oyer and Terminer or Quarter Sessions
in which the defendant was sentenced clearly shows a

waiver. There is no question that the refusal to grant the writ in those cases should be affirmed, unless there is a specific allegation in the petition and a finding supported by competent evidence produced by the petitioner that the waiver was not competently and intelligently made.

Many cases pending before us involve a determination of whether or not the defendant waived counsel. This question must be determined in the first instance by the court of common pleas which has the power and duty to hear evidence and find facts where necessary.

## Law and Practice to be Followed

As a guide to the common pleas courts in passing upon the counsel cases, we shall restate the applicable rules of law. In applying the basic constitutional concepts set forth above, the trial courts must follow certain applicable rules of evidence. Following the federal constitutional concepts relating to the appointment of counsel in the state courts does not require the state courts to ignore reasonable state rules of evidence and proof. Nevertheless, in addition to state cases, we shall also cite federal cases which support the relevant law of the Commonwealth.

In a habeas corpus case alleging denial of counsel, the trial court should proceed in accordance with the following rules:

One: In all such cases there must be a hearing at which testimony is taken unless (1) the facts averred by the petitioner, even if believed, are insufficient to require the granting of a writ of habeas corpus. *Commonwealth ex rel. Butler v. Rundle,* 407 Pa. 535, 536, 180 A. 2d 923 (1962), or (2) the averments in the petition are clearly refuted by the trial record. *Commonwealth ex rel. Norman v. Rundle,* 411 Pa. 648, 650, 651, 192 A. 2d 419 (1963) ; or (3) the petition, answer and

trial record disclose only questions of law involved, in which case the only hearing necessary is oral argument to present relator's views on the legal issues involved. *Commonwealth ex rel. Bishop v. Claudy,* 373 Pa. 523, 527, 97 A. 2d 54 (1953); *Walker v. Johnston,* supra, 312 U.S. 275, 284, 61 S. Ct. 574, 85 L. ed. 830 (1941).

Two: An accused who was able to secure counsel was not entitled to have counsel assigned to him. If, because of indigency or some other reason, the accused was unable to secure counsel, it was the duty of the trial court to assign counsel unless waived by the accused. Proof by the petitioner of his inability to obtain counsel or the fundamental unfairness of the action of the trial court is a prerequisite to the granting of a writ of habeas corpus.

Three: A judgment of sentence cannot be lightly set aside by collateral attack even on habeas corpus. When collaterally attacked, the judgment of a court carries with it a presumption of regularity. *Johnson v. Zerbst,* supra, 304 U.S. 458, 58 S. Ct. 1019, 82 L. ed. 1461 (1938). This presumption of regularity is strong in case of a judgment of conviction for crime, and the longer the judgment stands the stronger the presumption becomes. *Commonwealth ex rel. Simon v. Maroney,* supra, 195 Pa. Superior Ct. 613, 616, 171 A. 2d 889 (1961), affirmed 405 Pa. 562, 176 A. 2d 94 (1961); *Commonwealth ex rel. Savage v. Hendrick,* 179 Pa. Superior Ct. 601, 603, 118 A. 2d 233 (1955).

Four: In a habeas corpus proceeding, the petitioner has the burden of convincing the court of the truth of averments which establish that he is entitled to relief. *Commonwealth ex rel. LaTempa v. Burke,* 175 Pa. Superior Ct. 513, 516, 105 A. 2d 134 (1954). The United States Supreme Court also has held that where a defendant without counsel acquiesced in a trial resulting in his conviction and later seeks release by the extraordinary remedy of habeas corpus, the burden of proof

rests upon him to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel. *Johnson v. Zerbst,* supra.

Five: While the hearing judge can not capriciously disregard competent evidence, neither is he required to accept even uncontradicted testimony as true. *Walsh v. Penn Anthracite Mining Co.,* 147 Pa. Superior Ct. 328, 333, 24 A. 2d 51 (1942); *Evans v. Penn Mutual Life Insurance Co.,* 322 Pa. 547, 557, 186 A. 133 (1936). Absence of contradiction is always significant, but as the credibility of witnesses is for the trier of facts, oral evidence can be rejected, even when not contradicted, if it is not considered credible by the trier of facts. *Karcesky v. Laria,* 382 Pa. 227, 234, 114 A. 2d 150 (1955); *Commonwealth v. Kirkland,* 413 Pa. 48, 58, 195 A. 2d 338 (1963); *Hartman v. Gieraltowski,* 198 Pa. Superior Ct. 316, 320, 181 A. 2d 688 (1962); Henry on Pennsylvania Evidence II, §799, p. 251. As said in *Archer Estate,* 363 Pa. 534, 536, 70 A. 2d 857 (1950): "There is nothing which compels the fact finding body, whether it be judge or jury, to accept as verity uncontradicted testimony. Credibility of witnesses is always for the finders of fact." *Commonwealth ex rel. Howard v. Claudy,* 175 Pa. Superior Ct. 1, 102 A. 2d 486 (1954).

Six: As long as the tests to be applied to these cases remain fluid and unsettled, the trial courts should find in some detail the facts surrounding the matter of counsel. The court should find, among other relevant facts, (1) whether the petitioner had counsel, and if not, whether he was told by the judge, the district attorney or other person that counsel would be appointed upon request; (2) whether he requested counsel and if so when, where and of whom the request was made; (3) whether or not the petitioner was indigent, or unable to obtain counsel for any other reason; (4) whether or not the petitioner waived counsel in writ-

ing or orally, and (5) all other relevant circumstances relating to his capacity and intention to waive counsel.

Seven: Prisoners found to have been sentenced without counsel in violation of the Constitution are not to be released, but held for retrial. When the judgment of sentence is set aside, the order should be stayed long enough to permit the Commonwealth to appeal from the habeas corpus decision. If the Commonwealth does not appeal from an order setting aside the judgment of sentence imposed for a bailable offense, the defendant should be admitted to bail for appearance at his retrial on the charge for which he was sentenced, unless he is lawfully detained on another sentence or charge.

Eight: It has been suggested that it would be "draconian" to retry these prisoners. Considering the fact that these prisoners are nearly all recidivists, parole violators or proven dangerous criminals and already found by parole authorities to be unfit for release, this suggestion is incongruous to those charged with the duty of protecting society from criminal violence and is contrary to the decisions of the Supreme Court of the United States and the Supreme Court of Pennsylvania. It is the duty of the district attorneys to prosecute these defendants when the evidence to convict them is available, and the duty of the court, if the prisoners are again convicted, to sentence them in the light of all the facts known at the time of re-sentencing. This sentence may be less, or greater, or the same as the prior sentence.

In the case now before us for decision the facts averred by Goodfellow, even if believed, are insufficient to require the granting of a writ of habeas corpus. There is no allegation that the petitioner requested counsel, and no allegation that he was indigent or that he was, for any reason, unable to obtain coun-

sel. The prisoner pleaded guilty, was sentenced and no appeal was taken. There is a presumption of regularity. To overcome this presumption, the petitioner must allege facts, which he then has the burden of proving, which would require the court to set aside the sentence.[10] He has alleged no such facts. The allegation that he had no counsel and was offered none is insufficient without more to entitle him to have his sentence set aside. Because there is no allegation that he was indigent or unable to obtain counsel for any other reason or that he asked for or even desired counsel, the majority thinks the order of the court below denying the writ should be affirmed, but for the reasons set forth above, this case is

Certified to the Supreme Court.

OPINION BY WRIGHT J., CONCURRING IN PART AND DISSENTING IN PART:

I agree that the order of the court below should be affirmed. I do not agree with all that is said in the majority opinion, or that it is necessary to say it. Furthermore, I am not in accord with the conclusion that this appeal should be certified to the Supreme Court. See my dissent in *Piestrak Unemployment Compensation Case,* 193 Pa. Superior Ct. 242, 163 A. 2d 897.

CONCURRING OPINION BY FLOOD, J.:

I concur in certifying this case to the Supreme Court, but disagree with some of the implications of Principles One, Three and Four in the guides for practice to the trial courts.

---

[10] Judges WATKINS, MONTGOMERY and FLOOD are of the opinion that the petitioner is not entitled to have the writ granted unless he establishes at a hearing that he was unable to obtain counsel because of indigency or some other reason, but they are of the opinion that it is not necessary for him to allege this in his petition. Therefore, they would remand.

As I read the decisions of the United States Supreme Court, the presumption of regularity is not a sufficient basis for holding that a defendant has waived his constitutional right to counsel where there is no evidence of waiver in the record. Failure to request counsel does not in itself amount to a waiver. Further, while the petitioner must prove indigency to obtain relief, I doubt that failure to aver it in his petition is a sufficient ground to bar him from a hearing on the merits of the petition.

In *Carnley v. Cochran,* 369 U.S. 506 (1962), involving a serious but noncapital felony tried in a Florida State court, the Supreme Court said: "[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request. . . .

"However, the Florida Supreme Court may not have meant that the constitutional right to counsel depends upon a formal request. The court may have meant that from the very fact that no counsel was present, it would be assumed that the trial judge made an offer of counsel which the petitioner declined. Or, it may have meant that it would assume simply that petitioner knew of his right to counsel and was willing to forego it. Of course, the validity of such presumptions is immediately called in question because the accused has no way of protecting against them during his trial except by requesting counsel—a formality upon which we have just said his right may not be made to depend. Nor is it an answer to say that he may counter such presumptions on collateral attack by showing—if he can—that he had not in fact agreed, or been willing, to be tried without counsel. To cast such a burden on the accused is wholly at war with the standard of proof of waiver of the right to counsel which we laid down in Johnson v. Zerbst, 304 U.S. 458, 464, 465, 82 L. ed. 1461, 1466, 1467 . . .

"However, [W]e recognized in Rice v. Olson [324 U.S. 786 (1945)] that, although the Fourteenth Amendment would not countenance any presumption of waiver from the appearance of the accused without counsel and the silence of the record as to a request, the entry of the guilty plea might have raised a fact issue as to whether the accused did not intelligently and understandingly waive his constitutional right. We held that a hearing was required since the facts were in dispute. In the present case, however, there was no guilty plea, and the return to the writ does not allege an affirmative waiver. Therefore, there is no disputed fact question requiring a hearing. Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

This case should be remanded for a hearing as to whether the petitioner was indigent at the time of the trial and, if so, whether he understandingly and intelligently waived his right to counsel.

WATKINS and MONTGOMERY, JJ., join in this opinion.