Baigis Unemployment Compensation Case.

380

Argued March 3, 1947. Before RHODES, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent.)

*Franklin B. Gelder,* with him *J. H. Oliver,* for appellant.

*Roland M. Morgan,* with him *Charles R. Davis,* Special Deputy Attorney General, *T. McKeen Chidsey,* Attorney General, and *R. Carlyle Fee,* Assistant Deputy Attorney General, for appellee.

OPINION BY RENO, J., March 11, 1947:

The bureau allowed unemployment compensation to claimant, Alvin F. Baigis; upon the appeal by Glen Alden Coal Company, his base-year employer, the referee reversed the bureau; the board reversed the referee and allowed the claim. Glen Alden appealed to this court.

Claimant, a miner of the Biscontini Company, became unemployed because of a temporary stoppage of work, and was informed that he would be recalled when work again became available. Twenty-two days afterwards, his base-year employer by letter tendered employment to claimant, and requested him to call upon its superin-

tendent "to discuss the question of employment". The base-year employer had temporary or permanent work for the claimant in conformity with the existing working contract between all anthracite operators and the United Mine Workers of America, of which claimant is a member. Claimant did not report for the requested interview, because, according to the board's finding, "his unemployment was only temporary . . . was desirous of remaining in the employ of Biscontini Company and was not interested in returning to work at the Loomis Colliery" operated by his base-year employer.

The board concluded: "On the basis of the above findings, we are of the opinion that the work offered would have been suitable work and that the claimant would have been disqualified had the employer complied with the requirements of Section 402 (a) of the Law and Departmental Rule and Regulation No. 109. We must conclude, however, that the employer, having failed to comply with these requirements, did not make a valid offer of suitable work and that, therefore, the claimant cannot be disqualified under Section 402 (a) of the Law."

Section 402 (a) of the Unemployment Compensation Law, 43 PS §802, denies compensation for any week: "In which his [claimant's] unemployment is due to failure, without good cause, either to apply for suitable work at such time and in such manner as the department may prescribe, or to accept suitable work when offered to him by the employment office or by any employer: Provided, That such employer simultaneously notifies the employment office of such offer."

Department Rule 109, adopted under the authority of §201 of the Law, 43 PS §761, provides: "The offer to the claimant shall be in writing and a carbon copy or an exact duplicate thereof furnished to such office. The offer shall include: (1) The rate of pay and unit of work, or period of time, which such rate represents; (2) The scheduled working hours during each day of the

week; (3) The location of the work; (4) A description of the duties or a generally recognized term covering such duties; and (5) Any unusual requirements or conditions of work."

Appellant's letter substantially complied with the requirements of the rule, except that the rate of pay, unit of work, and the working hours were not stated. However, where both parties are subject to a collective-bargaining contract which provides for the wages, working conditions and virtually all the terms of employment, it is at least arguable whether exact compliance with the rule should be required. A carbon copy of the letter was simultaneously forwarded to the proper office which did not question its sufficiency. The rule is an administrative, not a legislative requirement, and it would seem that it should be enforced by immediate disapproval and rejection by the office to which the copy is sent. To hold the letter without protest, lulling the employer into a false sense of security, and later questioning its sufficiency to defeat his appeal is not a reasonable or fair practice.

The claimant did not question the sufficiency of the letter, nor was his refusal to interview appellant based upon the inadequacy of the letter. The "good cause" he assigned for his refusal of the proffered employment was that his unemployment was temporary, that he desired to return to the Biscontini Company and was not interested in returning to appellant. There is some suggestion in his testimony that he had been mistreated while in appellant's employ, but there is no finding of that fact, and indeed a negation of it in the board's conclusion that "the work offered would have been suitable work". The conclusion must be taken to mean that although claimant was only temporarily unemployed his conduct was not consistent with a genuine desire to work and be self-supporting, *Brilhart Unemployment Compensation Case*, 159 Pa. Superior Ct. 567, 49 A. 2d 260, and that his refusal to accept work during that

period was a "good cause" only because a letter of which he did not complain and which did not affect his action was not a full compliance with a board-made rule.

The most liberal interpretation and humane administration of the law will not sanction this result. The "good cause" assigned by the claimant having been found insubstantial and inadequate, no obligation rested upon the board to defeat appellant's contention by adjudicating the insufficiency of the offer. By so doing the board rejected a contention which it recognized as meritorious and valid in favor of a mere technical objection of its own invention and founded upon its rigid interpretation of its own rule. If there is anything in the Unemployment Compensation Law that is indisputably clear, it is that its benefits and objectives shall not be frittered away by slavish adherence to technical and artificial rules. Id. §505, 43 PS §825. It requires no argument to show that the adjudication and defeat of a meritorious case upon a harmless procedural flaw of which no complaint has been made and which had no effect upon the merits of the cause is a disposition of it upon a sheer hypertechnicality. As a valid claim of an employe will not be rejected upon that basis, so a base-year employer's legally legitimate efforts to reduce his contributions under the merit-rating system shall not be thwarted in that manner.

The prime objective of the statute is to alleviate the rigors of unemployment. The merit-rating provisions are inducements to employers to offer work to the unemployed, and to that extent reduce the number of unemployed persons. *Sturdevant Unemployment Compensation Case,* 158 Pa. Superior Ct. 548, 45 A. 2d 898. They will not be encouraged to do so if their bona fide offers are narrowly scrutinized and arbitrarily rejected because they do not punctiliously square with the inflexible requirements of a mere administrative rule. Capricious exaction of literal compliance with the rule of an administrative agency where its violation bears

no rational relation to the merits of a controversy is bureaucratic government at its worst. No one will expect this court, always vigilant lest justice be denied by allowing hollow form to govern solid substance and constantly lenient in the application of its own procedural rules, to approve exaltation of departmental regulations above the substantive merits of a case.

Decision reversed.