## Hughes Unemployment Compensation Case.

Argued November 15, 1962.   Before RHODES, P. J., ERVIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

*Dail Eugene Sloan,* with him *Eugene Charles Sloan,* for appellants.

*Sydney Reuben,* Assistant Attorney General, with him *David Stahl,* Attorney General, for Unemployment Compensation Board of Review, appellee.

OPINION BY WATKINS, J., December 12, 1962:

In these unemployment compensation cases the Bureau of Employment Security, the Referee, and the Unemployment Compensation Board of Review all found that the claimants were financially ineligible under the provisions of §404(a) and §404(c) of the Unemployment Compensation Law, 43 PS §804(a) and §804(c).

The three cases involve the same problem, were argued together and will be determined by this opinion. The claimants, Earl F. Hughes, Andrew S. Tobias and Andrew Paydo were last employed by the Crucible Steel Company, Pittsburgh, Pennsylvania, and their last days of work were May 13, 1960 and May 16, 1960, respectively.   They had first filed claims for benefits on June 19, 1959.   At that time they were idle for only

one week so their claims for the 1959 benefit year remained dormant until their separation from employment during the weeks of May 9, and May 16, 1960. The last compensable week under their 1959 benefit year was the week ending June 24, 1960.

They appeared at the local office during the last week of June, 1960, to file a new claim for the next benefit year. They were told by the claim taker that if they filed during the last week of June, 1960, the benefits would be based on $38 weekly but that effective July 1 benefits had been increased by the legislature to $40 weekly. They, therefore, chose to file on July 1, 1960, and drew benefits during the year ending June 30, 1961, at the $40 rate.

On July 1, 1961, each of the claimants filed new claims and it was then discovered that they had insufficient earnings during their base year which consisted of the second, third and fourth quarters of 1960 and the first quarter of 1961, to qualify under the law.

Had the applications been filed, originally, during the last week of June, 1960, they would have expired the last week of June 1961, and their base year earnings would have consisted of the four quarters of 1960, during which they had sufficient earnings to warrant continuing benefits to June, 1962.

The contention of the claimants is that the clerk in the local office was under a duty to advise the applicants of the effect their choice of filing on July 1, to get the benefit of the higher rate, would have on their second benefit year.

The unemployment compensation authorities found that the claimants were not misled as to their benefit rights under the law but only apprised of the increase in rates effective July 1, 1960. The contention of the claimants is best answered by the discussion contained in the Commonwealth's brief as follows: "We submit the record substantiates the Board's findings that the

appellants were given a clear choice as to the amount of benefits which could be obtained by them. It needn't be reiterated that the benefit rates changed on July 1, 1960 and therefore, appellants had a choice of filing for the old benefit rate or the new benefit rate. The record is clear that the claims takers were under a duty, which they observed, to merely explain the alternatives available to the applicants and not to influence their choice in any manner. It is equally clear that the appellants, without outside influence or coercion exercised their freedom of choice and chose the higher benefit rate. The fact that the appellants could not qualify for more benefits in the future is irrelevant to the issue here. Appellants would have the Court believe that the unemployment compensation authorities were under a duty to calculate and speculate what the maximum total benefit would be available to them under the alternative benefit rates in this situation. The local offices do not have in their possession the wage records of claimants, and it is only when an application is filed that the information as to wages credited to claimant's account (wage record) is obtained from the central office in Harrisburg. At the time the appellants filed their applications, on July 1, 1960 and July 1, 1961, no information as to the appellants' total earnings for their base years was available in the local office. These wage records, totaling in the millions, are received from employers and retained only in Harrisburg. To impose a duty on the unemployment compensation authorities in each local office to sit down with each and every applicant for unemployment compensation and fully explain all the possibilities under the law would render its administration burdensome, cumbersome and utterly impossible to implement. The law requires reasonableness under these circumstances and, it is submitted, that the unemployment compensation authorities properly acted

in apprising the applicants of the legislative increase in the weekly benefit amount. Appellants were primarily interested in signing up for benefits and, it appears, chose the immediate prospect of a higher benefit rate. To now impose a statutory duty on the unemployment compensation authorities when, in hindsight, it was shown that appellants became financially ineligible is to impose an obligation beyond the concept of reasonable administration or of statutory duty. It is also uncontradicted that appellants were satisfied with their benefit rate and did not contemplate a permanent unemployment status but hoped to return to work in the near future. The mere fact that this did not materialize should not result in penalizing the unemployment compensation fund. For, it is submitted that they responsibly carried out their duties by informing appellants of their choice of benefits. Appellants were not misled, unintentionally or otherwise, by the claims takers as to their rights under the law. The fact that appellants could not subsequently qualify financially should not and could not be attributed to the actions of the unemployment compensation authorities. Were the Court to hold otherwise, then the administration of the unemployment compensation law would be seriously hampered and impeded beyond the clear confines of the Law."

Decisions affirmed.