MARYELLEN LEVIN, Appellant-Appellee, *v*. ROBERT K. HASEGAWA, DIRECTOR OF DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS, STATE OF HAWAII, et al., Appellees-Appellants

NO. 5350

December 17, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the Department of Labor and Industrial Relations of the State of Hawaii from a judgment of the third circuit court in favor of Maryellen Levin, claimant for unemployment compensation benefits under HRS c. 383, the Hawaii employment security law.

The judgment appealed from reversed Decision No. 624-71 of the referee for unemployment compensation appeals, and adjudged that claimant's application for benefits "shall be deemed filed on July 5, 1971, with such consequences as shall follow therefrom."

In Decision No. 624-71, the referee had affirmed the determination of the department that claimant's benefit year began on June 13, 1971, and that the amount of claimant's weekly benefit was $23.00.

The following consequences followed from deeming claimant's application to have been filed on July 5, 1971: (1) claimant's benefit year would have begun on July 5, 1971; (2) the base period for computing the amount of claimant's weekly benefit would have been the four completed calendar quarters prior to July 4, 1971; (3) the amount of claimant's weekly benefit would have been $54.00, computed on $1,342.25, the wages claimant was paid during the April-June 1971 quarter; and (4) the payment of claimant's weekly

benefit would have commenced on July 11, 1971.

The amount of claimant's weekly benefit of $23.00 determined by the division was less than the weekly benefit of $54.00 to which claimant would have been entitled if her application were deemed to have been filed on July 5, 1971, because the determination of the department was based on $550.50, the wages claimant was paid during the January-March 1971 quarter.

The department did not compute the amount of claimant's weekly benefit on $1,342.25 because the April-June 1971 quarter was not a completed calendar quarter prior to June 13, 1971, the first day of the week in which claimant filed her application, and was a lag quarter in the parlance used in the department.

The case was before the circuit court on claimant's appeal to obtain a judicial review of the referee's decision pursuant to HRS § 383-41. The procedure for such review is set forth in HRS § 91-14. Under HRS § 91-14(f), such review is basically confined to the record.[1]

However, in this case, the parties stipulated that the department "need not submit a transcript of the proceedings before the unemployment insurance referee as a part of the designated record on appeal," and submitted the matter to the circuit court on the following: (1) copy of referee's Decision No. 624-71; (2) agreed statement of facts, which had attached thereto a copy of a pamphlet entitled, "Information on Unemployment Benefits," and a copy of a determination by the department of claimant's unemployment compensation benefits; (3) additional documentary evidence presented by the department, consisting of a print-out history of the benefit payments made by the department to claimant, the application for reconsideration of the determination of the department or notice of appeal filed by claimant, and a claim record card kept by the department with respect to

---

[1] HRS § 91-14(f) reads as follows: "(f) The review shall be conducted by the court without a jury and shall be confined to the record, except that in the cases where a trial de novo, including trial by jury, is provided by law and also in cases of alleged irregularities in procedure before the agency not shown in the record, testimony thereon may be taken in court. The court shall, upon request by any party, hear oral argument and receive written briefs."

claimant's case; and (4) testimony of an officer of the department regarding the additional documentary evidence.

There are some inconsistencies in the agreed statement of facts. The statements in paragraphs 2, 10, and 14 are inconsistent with the statement in paragraph 11. Also, the statement in paragraph 12 is inconsistent with claimant's actions in filing claim certifications. Such inconsistencies will be elaborated later in this opinion.

The following facts are undisputed in the record: (1) claimant filed her application for unemployment compensation benefits on June 14, 1971; (2) on July 2, 1971, claimant attended a benefit rights interview held by the department, at which her benefit rights and responsibilities, and the method of computing the amount of her weekly benefit, were explained to her; (3) the department made the determination of claimant's benefit year and the amount of her weekly benefit on July 6, 1971; (4) a copy of the determination was delivered to claimant on August 3, 1971; (5) on August 9, 1971, claimant filed with the department an application for reconsideration of the determination or notice of appeal therefrom, stating: "Because I earned much more in the 'lag quarter' than in the last four completed quarters, either the 'lag quarter' should be counted or I should have been told the consequences of filing on June 15 [sic] and given a chance to file as of July 1''; and (5) claimant filed claim certifications, and received weekly benefit payments as follows:

| Date claim certification filed | Benefit weeks | Date of payment of benefit | Amount of benefit payment |
|---|---|---|---|
| | 6-19-71 | Waiting period | |
| 7-6-71 | 6-26-71 | 7-20-71 | $23.00 |
| 7-6-71 | 7-3-71 | 7-20-71 | 23.00 |
| 7-20-71 | 7-10-71 | 7-22-71 | 23.00 |
| 7-20-71 | 7-17-71 | 7-22-71 | 23.00 |
| 8-3-71 | 7-24-71 | 8-5-71 | 23.00 |
| 8-3-71 | 7-31-71 | 8-5-71 | 23.00 |
| 7-17-71 | 8-7-71 | 8-19-71 | 23.00 |
| 8-17-71 | 8-14-71 | 8-19-71 | 23.00 |

| Date claim certification filed | Benefit weeks | Date of payment of benefit | Amount of benefit payment |
|---|---|---|---|
| 8-31-71 | 8-21-71 | 9-2-71 | 23.00 |
| 8-31-71 | 8-28-71 | 9-2-71 | 23.00 |
| 9-13-71 | 9-4-71 | 9-15-71 | 23.00 |

We turn now to the inconsistencies in the agreed statement of facts:

In paragraph 2 of the agreed statement, it is stated that the department gave to claimant the pamphlet entitled "Information on Unemployment Benefits", which contains a benefit table, and information regarding the manner in which weekly benefits are computed, after she filed her application for benefits. Paragraph 10 states that, at the time she filed her application, claimant did not understand that her lag quarter earnings would be excluded in computing the amount of her weekly benefit. In paragraph 14, it is stated that claimant would have waited until July 1, 1971, to apply for benefits had she known that to do so would have changed her benefit amount from $23.00 to $54.00 per week.

However, paragraph 11 contains the statement: "At the time of filing, Appellant [claimant] was not informed that if she delayed application until July 1, 1971, that her earnings in the April-June quarter would be included in computing her benefit amount, other than through the information contained in the pamphlet referred to in Paragraph 2, supra."

The clear implication from the words, "other than through the information contained in the pamphlet referred to in Paragraph 2, supra," is that at the time claimant filed her application for benefits, she had the pamphlet entitled "Information on Unemployment Benefits," and, through that pamphlet, was informed that if she delayed the filing of her application until July 1, 1971, her earnings in the April-June 1971 period would be included in computing the amount of her weekly benefit, but she was not so informed by the employee of the department who took her application.

In this connection, it is to be noted that, according to the statement made by claimant's attorney in the circuit court, the agreed statement was drafted by him.

The adjudication of the circuit court that claimant's application for unemployment compensation benefits be deemed filed on July 5, 1971, is based on the court's conclusion of law that the department abused its discretion in not allowing claimant to withdraw her application when (1) claimant did not have material information at the time she filed her application and (2) claimant attempted to withdraw her application within a reasonable time after obtaining the material information which would benefit her.

Part (1) of the conclusion of law on which the adjudication was predicated was based on a finding of fact that claimant did not know, and was not advised by the department of, the exact manner in which her weekly benefit amount was to be computed, until August 3, 1971.

The finding of fact is clearly erroneous. Paragraph 11 of the agreed statement of facts clearly implies that claimant was informed, through the information contained in the pamphlet, that, if she delayed her application until July 1, 1971, the wages she received in the April-June 1971 quarter would be included in computing the amount of her weekly benefit.

If claimant was not so informed through the pamphlet, she was so informed at the benefit rights interview held on July 2, 1971, for paragraph 3 of the agreed statement of facts states that claimant "was informed as to how her weekly benefit amount would be computed, through said pamphlet and through the subsequent Benefit Rights Interview."

The use of the word "subsequent" in paragraph 3 implies that claimant was already in possession of the necessary information through the pamphlet before the interview.

With regard to part (2) of the conclusion of law, the agreed statement of facts also contains a statement, in paragraph 12, that claimant was "not permitted to withdraw her claim upon notification of the amount of benefits she was to receive, although she immediately attempted to do so." That statement is inconsistent with claimant's actions in filing claim certifications as shown on the claim record card in evidence.

Although a copy of the department's determination of the amount of her weekly benefit was not delivered to claimant until August 3, 1971, there can be no question that she re-

ceived notification of the determination on July 6, 1971, the day on which it was made. On that day, claimant filed her claim certifications for the benefit weeks June 26, 1971, and July 3, 1971, and received benefit payments of $23.00 per week pursuant to those certifications on July 20, 1971. Claimant continued to file claim certifications from time to time thereafter, even after she filed her notice of appeal from the determination. According to the claim record card, claimant's last claim certification was filed on September 13, 1971, for the benefit week September 4, 1971, on which the benefit payment was made on September 15, 1971.

The record shows that claimant knew the manner in which the amount of her weekly benefit was to be computed long before August 3, 1971; that she had the necessary information on July 2, 1971, when she attended the benefit rights interview; and that she might have had the information even before she filed her application. Except for the statement in paragraph 12 of the agreed statement of facts, there is no showing that she made any attempt to withdraw her application. Granting that she made such attempt, in the light of the agreed statement, the attempt to withdraw was not made before July 6, 1971.

In the circumstances of this case, we do not think that the department abused its discretion in refusing to grant any attempt by claimant to withdraw her application.

Claimant's position appears to be that, regardless of the information she might have had, the department was under a duty to maximize the amount of the benefits to which she was entitled by alerting her to possible alternatives. She grounds such duty not on any statutory requirements but what she asserts to be the general duties of public officers to the public.

We see no such duty here. The duty of the department in the administration of the employment security law is to see that eligible unemployed persons be paid their benefits as expeditiously as possible. As stated in *Hughes v. Unemployment Compensation Board of Review*, 199 Pa. Super. 577, 580, 186 A.2d 453, 454 (1962), to impose a duty on the department to sit down with each applicant and fully explain all the possibilities under the law "would render its administration

burdensome, cumbersome, and utterly impossible to implement.''

The payment of unemployment compensation benefits under the State employment security law is financed in part by grants from the United States pursuant to the Social Security Act. It is provided in 42 USC § 503-(a) (1) that the Secretary of Labor shall make no certification for payment to any state unless he finds that the law of the state includes a provision for such methods of administration as are found by him to be reasonably calculated to insure full payment of unemployment compensation "when due".

With regard to that provision, it is stated in *California Human Resources Department v. Java*, 402 U.S. 121, 131 (1971): "[E]vidence in the legislative history of the Act and the commentary upon it supports the conclusion that 'when due' was intended to mean at the earliest stage of unemployment that such payments were administratively feasible after giving both the worker and the employer an opportunity to be heard.''

Claimant also contends that the law should be construed to include her lag quarter wages in calculating the amount of her weekly benefit, and, if it is not so construed, it is unconstitutional. We see no merit in the contention.

Reversed, and remanded, with direction to enter a judgment affirming Decision No. 624-71.

*Roy M. Miyamoto*, Deputy Attorney General *(George Pai,* Attorney General, with him on the brief) for Department of Labor and Industrial Relations.

*Andrew Levin* (Legal Aid Society of Hawaii) for claimant.

DISSENTING OPINION OF KOBAYASHI, J.<br>WITH WHOM LEVINSON, J., JOINS

I dissent.

The instant case is premised upon a very *limited* agreed statement of facts for the resolution of *specific* agreed statement of questions.

In the agreed statement of facts, *inter alia*, the following are enumerated:

1. Claimant [appellee] made a claim for unemployment compensation benefits effective June 13, 1971;

2. *Following* appellee's application for benefits, the Department of Labor and Industrial Relations [appellant] gave to her a pamphlet entitled "Information on Unemployment Benefits". (Emphasis added.)

In the agreed statement of questions presented to the trial court for resolve the following questions are enumerated:

1. Is appellant's duty to inform a claimant as to the method of determination of weekly benefit amount properly fulfilled by issuance of a pamphlet entitled "Information on Unemployment Benefits" and through the Benefit Rights Interview *after* application for benefits is made? (Emphasis added.)

2. May appellant refuse to allow withdrawal of an application for benefits once such application is made?

3. Is it appellant's duty to exclude appellee's earnings in the "lag-quarter" when computing the weekly benefit amount, even though said earnings are higher than in any of appellee's previous four completed quarters?

The key issue herein is as stated in the agreed statement of questions presented numbered 1 (one):

Is appellant's duty to inform a claimant as to the method of determination of weekly benefit amount properly fulfilled by issuance of a pamphlet entitled "Information on Unemployment Benefits" (Exhibit A) and through the Benefit Rights Interview *after* application for benefits is made? (Emphasis added.)

Appellant clearly assumes that it has a duty to inform the appellee personally. The only question is whether appellant has performed such a duty even though the information is given to the appellee after she has filed her application for benefits.

The majority opinion goes to extreme lengths on some rather flimsy reasoning to reverse a proper judgment of the trial court.

Without any question, on an agreed statement of facts, the parties have agreed that the appellee had received the pamphlet in question *after* appellee had filed her claim for

unemployment benefits. Agreed statement of facts numbered 2 (two) states as follows:

Following appellee's application for benefits, appellant gave to her a pamphlet entitled "Information on Unemployment Benefits", a copy of which is attached hereto as Exhibit A and made a part hereof by incorporation.

Yet the majority of the court, after a strained analysis and reasoning, states that agreed statement of facts numbered 11 (eleven) *implies* that appellee had received the pamphlet in question and was informed properly *before* she had filed her claim for unemployment benefits. Agreed statement of facts numbered 11 (eleven) states as follows:

At the time of filing, appellee was not informed that if she delayed application until July 1, 1971, that her earnings in the April-June, 1971 quarter would be included in computing her benefit amount, other than through the information contained in the pamphlet referred to in Paragraph 2, supra.

To compound the fallacy of its opinion, the majority of the court deliberately and totally ignores the "Agreed Statement of Questions Presented" numbered 1 (one) which reads as follows:

Is appellant's duty to inform a claimant as to the method of determination of weekly benefit amount properly fulfilled by issuance of a pamphlet entitled "Information on Unemployment Benefits" (Exhibit A) and through the Benefit Rights Interview *after* application for benefits is made? (Emphasis added.)

If any clarification were required to nullify the conclusion of the majority of the court that "paragraph 11 of the agreed statement of facts clearly implies that claimant (appellee) was informed through the information contained in the pamphlet" before appellee had filed her claim for unemployment benefits, said Agreed Statement of Questions Presented numbered 1 (one), without any uncertainty makes it crystal clear that appellee had been given the pamphlet in question and was informed of her rights *after* she had filed her claim for unemployment benefits.

260

The majority of the court thus violates a basic fundamental principle of appellate responsibility by failing to adhere to the record of the case on appeal.

On the agreed statement of questions numbered 1 presented for resolve herein, I am of the opinion that the appellant is under a duty to provide every claimant personally, prior to the filing of an application for benefits, such material information as may be necessary to the making of an informed decision by the appellee, the claimant herein. *See Hughes v. Unemployment Compensation Board of Review*, 199 Pa. Super. 577, 186 A.2d 453 (1962). And since, in the agreed statement of facts the appellant agrees that the necessary information was given to the appellee *after* the filing of the application for benefits, and the statement of questions presented numbered 1 (one) confirms the fact that appellee was given the pamphlet and informed of her rights *after* the filing of her claim, the appellant has clearly failed to fulfill its duty to inform the appellee.

I would affirm.