General Motors Corporation, Fisher Body Division, Appellant, *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Appellee.

Submitted on briefs June 6, 1974, to Judges CRUM-LISH, JR., KRAMER and BLATT, sitting as a panel of three.

*John G. Wayman,* with him *John T. Tierney, III,* and *Reed, Smith, Shaw & McClay,* for appellant.

*Sydney Reuben,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., August 2, 1974:

An employer appeals here from a determination of the Unemployment Compensation Board of Review[1] granting unemployment compensation to James A. Harvey for the week ending May 18, 1972. The following findings of fact made by the referee and adopted by the Board adequately frame the context in which we consider the legal issue raised by this appeal.

---

[1] Board member John Curtin, Jr. not concurring.

"1. Claimant was last employed by Fisher Body Div., G. M. C., Box 158, McKeesport, Pa., as a small press operator at $3.15 per hour, plus incentive, plus a cost of living, from April 15, 1968 to October 7, 1971, his last day of work, when he was laid off due to lack of work.

"2. Claimant was recalled by telephone to his former position and scheduled to report on February 21; February 22 or February 23, 1972.

"3. The employer notified the Bureau of Employment Security that claimant had been recalled on February 25, 1972; however, the employer could not furnish a copy of the recall letter to the Bureau for the reason that the recall had been made by telephone.

"4. Claimant alleged illness and promised to report at a later date and never did report, and on February 28, 1972, his seniority was cancelled with the Fisher Body Division of G. M. C.

"5. Claimant did not present any medical evidence to the employer nor to the Bureau until after his seniority (sic) was cancelled, when he presented medical evidence that he was able to return to work as of March 6, 1972."

Based upon these findings, the referee as well as the Board concluded that, although the recall of February 21, 1972 constituted an offer of work,[2] Harvey "cannot be disqualified under Section 402(a) of the Law[3] for the reason that the employer made the recall by telephone and under the Board policy such recall should be made by letter with a copy to the Bureau of Employment Security within three days of the date of recall."

---

[2] It was not disputed that the offer of work was "suitable work" within the meaning of Section 4(t), 43 P.S. §753(t) in that it was for the same position in which Harvey was employed before the layoff under an existing labor-management agreement.

[3] Unemployment Compensation Law, Act of December 5, 1936, Second Exec. Sess., P. L. (1937) 2897, as amended, 43 P.S. §802(a).

The Board policy apparently relied upon is found at 34 Pa. Code §§65.21, 65.22 which pertinently provide as follows:

"§65.21 Disqualification for benefits

"In accordance with the provisions of section 402(a) of the Law (43 P.S. §802), an employe shall be ineligible for benefits for any week in which he is unemployed because he has refused without good cause an offer for suitable work made either by the local public employment office or by an employer who notifies the employment office within three days of his offer to the potential employe.

"§65.22 Applicable rules

"(a) With respect to offers of suitable work made directly by any employer the following rules shall apply:

. . . .

"(3) The offer to the employe shall be in writing and a carbon copy, or an exact duplicate, shall be furnished to the employment office within three days after the mailing of the offer. The offer shall include all of the following:

"(i) The rate of pay and unit of work, or period of time which such rate represents.

"(ii) The scheduled working hours during each day of the week.

"(iii) The location of the work.

"(iv) A description of the duties or a generally recognized term covering such duties.

"(v) Any unusual requirements or conditions of work.

. . . .

"(c) If the job offered the employe is covered under a labor-management agreement and a statement to this effect is made in the written offer of employment no further description shall be required.

"(d) In any case it shall be the responsibility of the Department, before issuing a decision on a claim for benefits, to determine on the basis of facts whether the work offer was suitable within the meaning of section 4(t) of the Law (43 P.S. §753(t))."

As the last subsection to this regulation suggests, after it had determined that Harvey refused an offer of suitable employment, the Board was without authority, absent a showing of prejudice, to grant compensation merely because the form of the notice of an offer of work by a claimant's prior employer was defective. *Porter Unemployment Compensation Case*, 197 Pa. Superior Ct. 337, 178 A. 2d 788 (1962); *Baigis Unemployment Compensation Case*, 160 Pa. Superior Ct. 379, 51 A. 2d 518 (1947). As Judge RENO, writing for the Court in *Baigis* (where the employer's notice of an offer of employment failed to list the terms of employment required by a predecessor regulation), explained:

"The most liberal interpretation and humane administration of the law will not sanction this result. The 'good cause' assigned by the claimant having been found insubstantial and inadequate, no obligation rested upon the board to defeat appellant's contention by adjudication the insufficiency of the offer. By so doing the board rejected a contention which it recognized as meritorious and valid in favor of a mere technical objection of its own invention and founded upon its rigid interpretation of its own rule. If there is anything in the Unemployment Compensation Law that is indisputably clear, it is that its benefits and objectives shall not be frittered away by slavish adherence to technical and artificial rules. Id. §505, 43 P.S. §825. It requires no argument to show that the adjudication and defeat of a meritorious case upon a harmless procedural flaw of which no complaint has been made and which had no effect upon the merits of the cause is a disposition of it upon a sheer hypertechnicality. As a valid claim of

an employe will not be rejected upon that basis, so a base-year employer's legally legitimate efforts to reduce his contributions under the merit-rating system shall not be thwarted in that manner.

"The prime objective of the statute is to alleviate the rigors of unemployment. The merit-rating provisions are inducements to employers to offer work to the unemployed, and to that extent reduce the number of unemployed persons. Sturdevant Unemployment Compensation Case, 158 Pa. Superior Ct. 548, 45 A. 2d 898. They will not be encouraged to do so if their bona fide offers are narrowly scrutinized and arbitrarily rejected because they do not punctiliously square with the inflexible requirements of a mere administrative rule. Capricious exaction of literal compliance with the rule of an administrative agency where its violation bears no rational relation to the merits of a controversy is bureaucratic government at its worst. No one will expect this court, always on guard lest justice be denied by allowing hollow form to govern solid substance and constantly lenient in the application of its own procedural rules, to approve exaltation of departmental regulations above the substantive merits of a case." 160 Pa. Superior Ct. at 383, 51 A. 2d at 520, 521.

Consistent with the foregoing, we enter the following

ORDER

Now, August 2, 1974, the Order of the Unemployment Compensation Board of Review awarding benefits to James A. Harvey for the compensable week ending May 18, 1972 is reversed and vacated.