534 A.2d 848

Richard L. Turtzer, et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 27, 1987, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

550

*Daniel W. Cooper, Cooper, LePore & Dreeland,* for petitioners.

*Jonathan Zorach,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, December 10, 1987:

This is an appeal brought by Richard L. Turtzer as the representative claimant for approximately 1000 employees of Volkswagen of America[1] from a decision of the Unemployment Compensation Board of Review (Board) affirming a referee's decision that the Office of Employment Security (OES) correctly determined Turtzer's benefit year.

This case was previously before this Court on the issue of whether Turtzer had mounted a collateral attack on the assignment of his application for benefits date and was therefore prohibited by Section 509 of the Unemployment Compensation Law, Act of December 5,

---

[1] Approximately 4,500 bargaining unit employees were involved in the mass lay-off at Volkswagen in August of 1980.

1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §829 from doing so.[2] This Court decided the issue in favor of Turtzer concluding that the appeal was not an impermissible collateral attack and remanded the case to the Board for a determination of whether the OES erred in its assignment of an application for benefits date *(Turtzer I)*.

Extensive factual findings were made by the referee in the original action and were adopted by the Board in its order affirming the referee's decision. Neither party challenged the accuracy of those findings. On remand and after consideration of an augmented record the Board made factual findings which are essentially the same as those made in the original decision. For purposes of clarity, we will repeat the complex factual history of this case essentially as it was set forth in our earlier unpublished *Turtzer I* opinion.

The [factual history underlying this appeal] began in the summer of 1980 when Volkswagon [sic] implemented a mass lay-off due to a plant-wide production shutdown. Turtzer and the claimants he represents were laid off on August 29, 1980. In anticipation of the lay-off, on July 30, 1980, representatives of OES, Volkswagon [sic] and Local 2055 of the United Auto Workers Union, Turtzer's collective bargaining agent, met to establish a procedure for expeditiously handling the thousands of unemployment compensation claims which would result from the mass lay-off. . . . [U]nder a new collective bargaining provision, [certain] employees who were to be laid off on August 29, 1980 would be eligible for 'short week benefits' for the week ending Sep-

---

[2] *Turtzer v. Unemployment Compensation Board of Review* (No. 2011 C.D. 1983, filed February 5, 1985).

tember 6, 1980. . . . [T]his new contract provision [operated such that] employees with at least one year seniority would receive 32 hours of pay at 80% of their regular wage rates, despite the lay-off. Furthermore, because Labor Day fell on September 1, 1980, the employees were entitled to holiday pay for the week ending September 6th. The OES took the position that both the holiday pay and the short week benefits would be offset against the employees' unemployment compensation entitlements. Local 2055, on the other hand, contended that the short week benefits should not be offset [and announced its intention to appeal any determinations which did offset the short week benefits].

. . . [I]t was agreed that the employees slated to be laid off on August 29th would be assigned an application for benefits date of August 31, 1980. It was also agreed that because the employees' short week benefits and holiday pay for the week ending September 6th would not exceed the sum of their weekly benefit rate and partial benefit credit, they would be assigned a waiting week for the week ending September 6, 1980. . . . The employer agreed to supply the OES with a computer printout containing all the relevant financial data concerning the employees scheduled for lay-off on August 29, 1980.

The lay-off occurred as scheduled, and the claimants were given an application for benefits date of August 31, 1980 and a waiting week ending September 6, 1980 in accordance with the July agreement between the OES and Local 2055. Subsequent to the lay-off, on September 12, 1980, the OES received the computerized

data which was supplied by the employer. This data indicated that for the week ending September 6, 1980, Turtzer and other similarly situated claimants received a cost of living payment in addition to their holiday pay and short week benefits. The sum of these three payments exceeded the sum of the claimants' weekly benefit rate and partial benefit credit. Based on this information, the OES, on September 24, 1980, issued individual determinations ruling the waiting week ending September 6, 1980 invalid and substituting a waiting week ending September 13, 1980. *No change was made by the OES regarding the application for benefits date of [August 31, 1980].* No appeals were taken from these determinations.

During the 52 week period subsequent to September 7, 1980, the claimants received four weeks of unemployment compensation benefits due to lay-off, the last benefits being paid for the week ending September 5, 1981. Because the claimants herein had application for benefit dates of August 31, 1980, they did not receive [benefits] equal to four times their weekly benefit rate within their benefit year which ended on August 29, 1981, and therefore, were not compensated for their waiting week, namely, the week ending September 13, 1980.

Following another annual mass lay-off in late August of 1981, the claimants filed for benefits on September 1, 1981. In Notices of Financial Determination dated September 8, 1981, they were given application for benefits . . . dates of August 30, 1981 with benefit year ending dates of August 28, 1982. The claimants filed timely appeals from these financial determinations,

each claimant asserting that his appeal was predicated on the basis that an incorrect benefit year was used to determine eligibility. (Emphasis added and footnotes deleted.)

*Turtzer I* at 1-4.

Essentially, the claimants assert that if their 1980 application for benefits dates had been properly adjusted concurrent with the adjustment of their 1980 waiting weeks they would have been assigned application for benefits dates of September 7, 1980. Accordingly, their benefit years would have ended on September 5, 1981 rather than on August 29, 1981. As the Board aptly states in this case in its decision of December 6, 1985,

It is that extra week that is crucial since the token claimant herein and others similarly situated, did not have five weeks of layoff or unemployment during their benefit year period and thus could not qualify for a paid waiting week. The employees with an application for benefits effective date of September 7, 1980 did have five weeks of layoff and did qualify for the paid waiting week, pursuant to Section 401(e)(3) of the Pennsylvania Unemployment Compensation Law [sic]. The fifth week of layoff for these claimants was the week ending September 5, 1981; and this qualified them for waiting week credit since their benefit year did not end until September 5, 1981.

The token claimant had a benefit year that ended on August 29, 1981 and his week of unemployment for the week ending September 5, 1981 was related to a new benefit year based on a new application for benefits effective August 30, 1981.

Board decision at 5.

The claim for waiting week credit is based on Section 401(e)(3) of the Unemployment Compensation

Law.[3] On remand the Board concluded that the OES had not erred in its assignment of Turtzer's application for benefits date. It relied primarily on *Hughes v. Unemployment Compensation Board of Review*, 199 Pa. Superior Ct. 577, 186 A.2d 453 (1962) in reaching its conclusion. We find the Board's reliance on *Hughes* to be misplaced based on an erroneous interpretation of that case.

The claimants in *Hughes* appeared at their local filing office during the last week of June, 1960, to apply for benefits. The claim taker advised them that the benefit rate at that time would be based on $38 weekly but that effective July 1, 1960, that rate would be increased to $40 weekly. The *Hughes* claimants then chose to file on July 1, 1960 and received benefits at the higher rate through the end of their benefit year. On July 1, 1961 the claimants filed new claims, however, they were found to be ineligible for benefits based on the fact that their base year earnings were insufficient. Had the claimants applied for benefits during the last week of June, 1960 their base year earnings would have consisted of the four quarters of 1960 which were sufficient to warrant continuing benefits to June, 1962.

The claimants argued that the local filing office was under a duty to advise them what effect the July 1, 1960 filing date would have on their 1962 benefit year. The Board disagreed and the Superior Court adopted the

---

[3] Prior to 1983 benefits were payable for waiting weeks pursuant to Section 401(e)(3), 43 P.S. §801(e)(3) which was deleted by amendment dated July 21, 1983, P.L. 68, No. 30, §16.

That Section provided:

Notwithstanding any provision of this subsection, when an individual has been paid benefits in his current benefit year equal to four times his weekly benefit amount, he shall be eligible to receive benefits for his waiting week claim in accordance with this act.

Board's argument that the local office's duty was merely to explain the alternatives to the claimants and not to influence their choice in any manner. " 'To impose a duty on the unemployment compensation authorities in each local office to sit down with each and every applicant for unemployment compensation and fully explain all the possibilities under the law would render its administration burdensome, cumbersome and utterly impossible to implement. ' " 199 Pa. Superior Ct. at 580, 186 A.2d at 444, *quoting* the Commonwealth's brief.

In the present case, the Board interprets *Hughes* as addressing the issue of whether a claimant may "validly argue that there should be an *ex post facto* change in a prior application merely because it affects a *later* benefit year or chain of benefit years." Board decision at 7 (emphasis in original). Further, the Board identifies this as the issue now before us. We cannot agree with either of the Board's premises for three reasons.

First, there is no indication in the Superior Court's opinion in *Hughes* that the claimants or the Board argued anything other than what duty the local office owes to an applicant for unemployment compensation benefits. In the case before us, we are not concerned with that issue.

Second, the issue as stated by the Board is not the issue in *this* appeal. That was essentially the issue in *Turtzer I* which this Court resolved in favor of the claimants holding that it was not an impermissible collateral attack to challenge the Board's assignment of their application for benefits date. The only question before us now is whether the OES erred in continuing to maintain August 31, 1980 as the claimants' application for benefits date following a change in their waiting weeks.

Third, the Board's reliance on *Hughes* is misplaced for factual reasons. In *Hughes* the claimants were found

to have benefited from the manner in which they chose to have their applications treated. That is, they chose the later filing date in order to take advantage of the higher benefit rate. Here, the Board has failed to demonstrate what, if any, benefit Turtzer received from the assignment of August 31, 1980 as his application for benefits date. In fact, OES derived the benefit of this application for benefits date. Some 4,500 Volkswagen employees were involved in the mass lay-off. On July 30, 1980, Union officials met with OES to establish a procedure for the handling of these thousands of unemployment compensation claims that would be filed with respect to the plant shutdown. The orderly processing of these claims which resulted in the assignment of August 31, 1980 as the claimants' application for benefits date, inured to the benefit of OES in that absent some pre-established procedure, it faced the potential of having thousands of claimants appear at its various offices at one time.

The Board also asserts that the claimants here should be estopped from challenging the assignment of their application for benefits date inasmuch as the claimants "requested the change they are now seeking to overturn." Board decision at 7.

We find that the factual basis upon which the Board must necessarily rest this argument is not supported by substantial evidence in the record. First, there was no change made to the claimants' application for benefits dates, much less at their request. To the contrary, the basis for this proceeding is the fact that *OES failed* to change the application for benefits date from August 31, 1980 to September 7, 1980. Accordingly, we reject the Board's estoppel argument.

The Board also argues that if the claimants prevail the result would be an impermissible overlapping of two benefit years. That is, the corrected application for

benefits date would be September 7, 1980 with a corresponding benefit year ending September 5, 1981. The claimants applied for benefits as a result of the 1981 mass layoff with an application for benefits date of August 31, 1981, thereby creating the overlap. We have several reasons for finding this argument to be meritless.

First, we note that the cases relied upon by the Board in its decision and again in its brief do not address the issue in this case. *Susquehanna Collieries Div. of M. A. Hanna Co. v. Unemployment Compensation Board of Review,* 193 Pa. Superior Ct. 242, 163 A.2d 897 (1960),[4] concerned the question of whether claimants who received vacation allowances from their employer for a period during which the employer was closed for vacation qualified for unemployment compensation benefits. The Board asserts that the case stands for the proposition that the legislature did not intend to create a system for double payments. We do not agree with the Board's broad and over simplified interpretation of this case. Further, we must note that the Superior Court did not decide the case. The vote on the case was three to affirm and four to reverse. However, the four judges voting to reverse did not agree as to an allocation formula. Accordingly the Superior Court certified the appeals to the Supreme Court of Pennsylvania.[5]

---

[4] Cited by the Board as *Piestrak Unemployment Compensation Case,* 193 Pa. Superior Ct. 242, 163 A.2d 897 (1960).

[5] We are disturbed by the Board's representation to this Court of the holding in the *Susquehanna* case. At page 8 of its decision and page 29 of its brief the Board provides the following quotation from that case. " 'We have frequently said that it was not the intent of the Unemployment Compensation Law to create a fund for double payments . . . [sic]' " In fact, the completed quotation reads, "We have frequently said that it was not the intent of the Unemployment Compensation Law to create a fund for double payments so that for the same period of idleness, an employe could receive

The Board also cites *Lewis v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 412, 454 A.2d 1191 (1983) as support for its interpretation of *Susquehanna,* which reliance we find to be misplaced. In *Lewis* we rejected a claimant's constitutional attack of Sections 401(a) and 404 of the Unemployment Compensation Law[6] stating, "The procedures set forth under Sections 401(a) and 404 of the Act do not disqualify the claimant for purely arbitrary reasons and we doubt that the legislature intend a claimant to be entitled to use the same quarter's wages twice—i.e. for two successive benefit years." 71 Pa. Commonwealth Ct. at 416, 454 A.2d at 1193. We find nothing in *Lewis* to be applicable here. Turtzer will not be using the same quarter's wages to qualify for two successive benefit years. While we are, of course, in agreement with the rule of law as set forth in *Lewis,* the Board has not provided us with an argument as to why or how that rule relates to the possible overlapping of benefit years here.

Second, if an overlapping of benefit years does result here, the Board is estopped from asserting that defect as a defense. These claimants were laid off on August 29, 1980. As noted earlier, August 31, 1980 was assigned to the claimants by OES as their application for benefits date. In fact, August 31, 1980 was assigned

---

both remuneration from his employer and unemployment compensation, and that §4(a) of the Unemployment Compensation Law has as its specific purpose the *prevention* of payments of benefits during periods of idleness where the claimant has received remuneration which relates thereto." (Emphasis in original.)

The case was subsequently considered and decided at *Susquehanna Collieries Div. of M.A. Hanna Co. v. Unemployment Compensation Board of Review,* 404 Pa. 527, 172 A.2d 807 (1961).

[6] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §§801(a) and 804.

to all claimants who were laid off on August 29, 1980.[7] Further, these claimants were permitted by OES to report to their local filing offices to apply for benefits only during the week of September 8, 1980, and on such day during that week according to an OES schedule based on the last digit in their social security number.[8]

43 P.S. §753(w)(1) provides:

A 'Valid Application for Benefits' means an application for benefits on a form prescribed by the department, which is filed by an individual, as of a day not included in the benefit year previously established by such individual, who (1) has been separated from his work or who during the week commencing on the Sunday previous to such day has worked less than his full time due to lack of work. . . . ·

Recognizing the importance of this definition we stated in *Briglia v. Unemployment Compensation Board of Review*, 70 Pa. Commonwealth Ct. 159, 161, 452 A.2d 900, 901 (1982), "[A] critical factor is the date on which the claimant files his application for benefits. It is that date which determines a claimant's 'benefit year.' " (Footnotes deleted.)

Here, Turtzer filed his application for benefits sometime during the week of September 8, 1980, yet

---

[7] Union Exhibit 7, which is a memo dated August 14, 1980, from the Acting Manager of the OES East Huntingdon Local Office to the Regional Director of Region Six, sets forth the procedure for handling the 1980 Volkswagen lay-off. Item 8 on page 2 of that memo provides, "The local office will back date all claims to 8-31-80."

Further pursuant to Volkswagen's schedule, not all of those involved in the lay-off had a lay-off date of August 29, 1980. The Board found that no procedures were outlined with respect to those laid off prior or subsequent to August 29, 1980.

[8] Union Exhibit 2.

his application for benefits date was established as August 31, 1980. While we recognize that back dating is authorized pursuant to 34 Pa. Code §65.33 and that such an arrangement was necessary to facilitate an orderly manner in which these thousands of claims were to have been handled, such a procedure is, however, artificial. We see no reason for depriving these innocent claimants of benefits to which they are entitled on the basis that their application for benefits dates had been predetermined and that any change in that determination may affect subsequent applications. We must also note that a claimant whose application for benefits date was originally assigned as August 31, 1980, had that assignment changed to September 7, 1981 by a local office when the discrepancy between his original application for benefits date and his corrected waiting week was brought to the OES' attention. We fail to see why Turtzer and those claimants he represents should be treated differently from this claimant who received compensation for his waiting week. Further, the thousands of other employees who were affected by these mass lay-offs received compensation for their 1980 waiting week simply because their applications were not processed in the same manner as Turtzer's. Accordingly, we reverse the decision of the Board.

We believe this result is consistent with the tenet that the Unemployment Compensation Law is "remedial in nature and its benefits and objectives shall not be frittered away by slavish adherence to technical and artificial rules." *Unemployment Compensation Board of Review v. Jolliffe,* 474 Pa. 584, 586, 379 A.2d 109, 110 (1977) *quoting Baigis Unemployment Compensation Case,* 160 Pa. Superior Ct. 379, 383, 51 A.2d 518, 520 (1947).[9]

---

[9] We note that in addition to Mr. Turtzer, several other claimants who are similarly situated, appealed the assignment of

562

ORDER

Now, December 10, 1987, the Decision of the Unemployment Compensation Board of Review at No. B-219529-B, dated December 6, 1985, is hereby reversed.

---

their application for benefits dates. The Board issued orders in each of those cases identical to that issued in Mr. Turtzer's case. All of the claimants are identified as petitioners in the Petition for Review filed with this Court. The single petition is incapable of bringing before us all of the Board's orders pertaining to these claimants. *General Electric Credit Corp. v. Aetna Casualty and Surety Co.*, 437 Pa. 463, 263 A.2d 448 (1970). However, in the interest of judicial economy and the fact that an agreement has been reached between the parties that Mr. Turtzer would act as the token claimant we will not quash the whole appeal.